**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-1589

_____

United States of America,          *
                                   *
          Plaintiff-Appellee,      *    Appeal from the United States
                                   *    District Court for the
     v.                            *    District of Minnesota.
                                   *
Richard William Field, also        *
known as Mike Field,               *
                                   *
          Defendant-Appellant.     *


_____

Submitted:  November 20, 1996

Filed:  April 7, 1997
_____

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

     Richard Field appeals the sentence imposed on him by the district court[1] following his conviction of one count of conspiracy to defraud the United States of funds and one count of mail fraud, and following his entry of a guilty plea to one additional count of conspiracy to defraud the United States.  Richard challenges the

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

district court's findings that he did not play a mitigating role in the offense and that he did not accept responsibility for his offenses, and he challenges the court's refusal to depart downward because of the economic impact of his incarceration on innocent third parties.  We affirm.

## I.

On March 23, 1994, a federal grand jury indicted Richard Field, his brother Clark Field,[2] Rudell Oppegard, and Martin Gjerde on 15 counts, including charges of conspiracy to defraud the United States of funds in violation of 18 U.S.C. § 371 (1994), mail fraud in violation of 18 U.S.C. § 1341, and making false statements in violation of 18 U.S.C. § 1001.  The indictment charged two separate conspiracies, one involving the Field brothers and Rudell Oppegard (the Twin Valley State Bank conspiracy), and the other involving the Field brothers and Martin Gjerde (the Bonanza Valley State Bank conspiracy).

Both conspiracies arose out of the Field brothers' application to the City of Clarkfield, Minnesota, for a Department of Housing and Urban Development (HUD) Small Cities Grant Program loan in the amount of $282,000 to establish a new whey drying business, Clarkfield Drying, Incorporated.  Their HUD loan application indicated that funding in addition to the HUD grant, specifically an additional $292,000 of private financing, would be necessary for the purchase of equipment and building renovation to ensure the success of the business.  Before agreeing to release the HUD funds, the Minnesota Department of Trade and Economic Development (MDTED),

---

[2]We affirm Clark Field's sentence in a separate appeal filed today.  See United States v. Clark Beach Field, No. 96-1588 (8th Cir. Apr. ___, 1997).

2

which administered the federal program, required proof through a loan commitment letter that the private financing had been secured.

Unable to secure the necessary additional funding after numerous attempts, the Field brothers entered into a scheme with Rudell Oppegard, President of Twin Valley State Bank in Twin Valley, Minnesota. Oppegard agreed to provide the Fields with a false letter of credit in the amount of $292,000, written on Twin Valley State Bank stationery, which the Fields could use in support of their HUD loan application. All three men knew that the money would not actually leave the bank. The scheme convinced the commissioner of the MDTED and the City of Clarkfield that the required private funding had been secured. Based on this assumption, the MDTED agreed to release the HUD funds to the city, which would in turn lend the HUD funds to the Fields, provided the Fields could prove that the Twin Valley State Bank had closed the bank loan and released the private funding. Clark Field repeatedly assured the city that the private funds allegedly secured through the letter of credit would be released, but the Twin Valley State Bank did not close on the bank loan and instead informed the city attorney that the loan commitment letter from Oppegard was unauthorized, because it purported to lend an amount that was beyond the bank's lending limit.

After this fraudulent attempt to obtain the HUD funds failed, the Fields sought to obtain the $292,000 in private funding through Martin Gjerde, president of the Bonanza Valley State Bank and a longtime acquaintance of Richard's. Richard introduced his brother Clark to Martin Gjerde. Initially, Gjerde indicated that he would be unable to provide the private funding they sought because, among other reasons, Clarkfield was outside the Bonanza Valley State Bank's service area, and Gjerde was not familiar with Clark. Richard and Clark then proceeded to create a Minnesota corporation,

3

Minnewaska Capital Investment, Inc., in Glenwood, Minnesota, which is within the Bonanza Valley State Bank service area. Richard was listed as the president of Minnewaska, a company whose sole purpose was to funnel money from the bank to Clarkfield Drying, Inc., and back.

After the formation of Minnewaska, Gjerde agreed to provide a paper loan transaction, in which $292,000 would be loaned to Minnewaska with the understanding among the parties that it would be repaid within six months. Richard, Clark, and Gjerde signed the loan, and the bank advanced the funds to a Minnewaska checking account with Bonanza Valley State Bank. The same day, the funds were transferred to a Clarkfield Drying, Inc., checking account at Bonanza Valley State Bank, and $173,000 was immediately transferred back to the bank through the Minnewaska account. The balance of $119,000 remained in Clarkfield Drying's account to serve as evidence that the loan had in fact closed.

Richard, Clark, and Gjerde represented that $173,000 of the loan funds had been used to purchase equipment as promised in the funding letter. The false loan documents were provided as proof that the Fields had obtained the necessary private funding. Richard and Clark stated in an affidavit that the funds had been used to purchase equipment. In reliance on this false documentation, the MDTED released the HUD funding. After the HUD funds had been released, Richard paid the remaining balance of the loan to Bonanza Valley State Bank, as well as $3,571, purportedly a payment of interest. Bank records reveal that the loan was merely a paper transaction, that the bank never intended to allow the funds to leave the bank, and that Gjerde had frozen Clarkfield

4

Drying's accounts to assure that the money would not be spent.[3] The Fields eventually defaulted on the HUD loan.

As noted above, numerous federal criminal charges arose out of these two conspiracies to defraud the United States. The district court severed the counts relating to the Twin Valley State Bank conspiracy from those related to the Bonanza Valley State Bank conspiracy, and tried them separately. The first trial involved the Field brothers and Rudell Oppegard, all charged with one count of conspiracy to defraud the United States and one count of mail fraud, arising from the Twin Valley State Bank conspiracy. The jury returned guilty verdicts against all three defendants on both counts. Facing a second trial on multiple additional counts relating to the Bonanza Valley State Bank conspiracy, Richard and Clark decided to plead guilty to one additional count of conspiracy to defraud the United States, based on their dealings with Gjerde, and they waived their right to appeal the guilty verdicts resulting from the first trial. In return, the government dismissed all remaining counts of the indictment against them. Gjerde pleaded not guilty and proceeded to trial, where he was convicted on one count of conspiracy to defraud the United States of funds but acquitted on all other counts.

At sentencing, the district court denied Richard's requests for a reduction based on acceptance of responsibility and his role in the offense, and also denied his motion for a downward departure based on economic hardship to innocent third parties. The district court sentenced Richard to twenty-one months of imprisonment and

---

[3]For additional facts concerning Martin Gjerde's involvement in the scheme, see United States v. Gjerde, No. 96-2033 (8th Cir. Apr. ___, 1997).

5

two years of supervised release, and ordered partial payment of restitution in the amount of $5,000.  Richard appeals his sentence.

## II.

Richard Field contends that the district court erred in calculating his sentence by not granting him a four-level reduction for his claimed minimal role in the offense or a two-level reduction for his claimed role as a minor participant.  The Guidelines provide that a defendant's offense level is decreased by four levels if the defendant was a minimal participant in the criminal activity and two levels if he was a minor participant. United States Sentencing Commission, Guidelines Manual, § 3B1.2 (Nov. 1995).  A "minor" participant is one "who is less culpable than most other participants, but whose role could not be described as minimal."  USSG § 3B1.2, comment. (n. 3).  For conduct that falls somewhere between these two categories, a three-level decrease is appropriate.  USSG § 3B1.2.  A "participant['s] status depends on culpability, which is a determination requiring sensitivity to a variety of factors."  United States v. Hall, 949 F.2d 247, 249 (8th Cir. 1991) (internal quotations omitted). Because the evaluation of a participant's status in the offense involves a factual determination, we must accept the district court's findings regarding a defendant's role in the offense unless they are clearly erroneous.  United States v. Shaw, 94 F.3d 438, 443 (8th Cir. 1996), cert. denied, Barnes v. United States, 117 S. Ct. 786 (1997).

The district court denied any reduction for Richard's role in the offense, concluding that he was an average participant. Richard now argues that, although he committed certain criminal acts, he was ignorant of the fact that he was breaking the law.  He

contends that he did not sign the false loan documents with knowledge of fraud. Such an assertion is contrary to the guilty verdicts entered against him as well as his guilty plea. The district court found that while Clark was the impetus behind the scheme, Richard was "deeply involved in the criminal conspiracy" and "the scheme to defraud would not have succeeded without his participation." (Sent. Tr. at 160.) The record reveals that Richard incorporated and was an officer of Clarkfield Drying and was the president of Minnewaska, the vehicles through which the schemes to defraud were carried out. Richard aided in obtaining the false letter of credit from the Twin Valley State Bank and the paper transaction loan from Bonanza Valley State Bank. All critical documents bore his signature as well as Clark's, Richard was present at the loan negotiations, and Richard understood that the money from the Bonanza Valley State Bank loan would never really leave the bank.

Nevertheless, Richard asserts that he is entitled to a reduction because he is less culpable than his brother, Clark, whom the district court found to be the driving force behind the scheme to defraud. Even though Richard may have been less culpable than his brother, the record clearly indicates that he played an integral part in the offense throughout the entire scheme. One defendant can be less culpable than another participant without necessarily qualifying for a reduction as a minor participant. See United States v. Rodamaker, 56 F.3d 898, 904 (8th Cir. 1995). We conclude that the district court did not clearly err in its determination that Richard was an average participant in the offense.

Richard also contends that the district court erred by not granting him a reduction for acceptance of responsibility. A district court's decision as to whether a defendant has accepted

7

responsibility for his criminal acts is largely a factual question that turns on issues of credibility, and we therefore reverse such a decision only if it is clearly erroneous. United States v. Behr, 33 F.3d 1033, 1036-37 (8th Cir. 1994). We afford great deference to the determination of the district court judge, who is in a unique position to evaluate whether a defendant has accepted responsibility for his offense. United States v. Byrd, 76 F.3d 194, 196 (8th Cir. 1996); USSG § 3E1.1, comment. (n.5).

Richard asserts that the district court clearly erred in concluding he had not accepted responsibility because he pleaded guilty before the start of the bifurcated trial on the charges arising from the Bonanza Valley State Bank conspiracy. The district court found that Richard did not demonstrate an acceptance of responsibility because he did not timely notify the government of his intention to plead guilty. Richard went to trial on the two counts arising out of his activities in the Twin Valley State Bank conspiracy. He denied the factual elements of his guilt. Only after the jury found him guilty on those counts did he enter his plea of guilty to the Bonanza Valley State Bank conspiracy, and then not until the first day of the second trial. The timeliness of his conduct in manifesting an acceptance of responsibility is an appropriate consideration when determining whether a defendant qualifies for a reduction on this basis. USSG § 3E1.1, comment. (n.1(h)). Accordingly, we conclude that the district court did not clearly err in denying Richard a reduction to his offense level for acceptance of responsibility.

Finally, Richard contends that the district court erred by not recognizing its authority to depart downward on the basis of economic hardship to innocent third parties. The district court may impose a sentence outside the guideline range "if the court finds that there exists an aggravating or mitigating circumstance

8

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG § 5K2.0 (internal quotations omitted). A circumstance that is not ordinarily relevant to the sentencing determination may be relevant under this section provided it is "present to an unusual degree and distinguishes the case from the `heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." Id.

We accord a unitary abuse-of-discretion review to "[a] district court's decision to depart from the Guidelines," Koon v. United States, 116 S. Ct. 2035, 2046 (1996), but a discretionary decision not to depart from the Guidelines is unreviewable on appeal absent an unconstitutional motive, United States v. McCarthy, 97 F.3d 1562, 1578 (1996), cert. denied, 117 S. Ct. 1011 (1997); United States v. Deitz, 991 F.2d 443, 447 (8th Cir. 1993). We have jurisdiction to review a district court's decision not to depart only where the decision is based on the district court's legally erroneous determination that it lacked authority to consider a particular mitigating factor. Deitz, 991 F.2d at 447. See also Koon, 116 S. Ct. at 2047 ("whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point").

In this case, Richard moved for a downward departure on the ground that his imprisonment will cause economic hardship to innocent third parties, namely his family and those persons employed by his lutefisk business. The district court concluded that "under the facts of this case, a downward departure based on the impact that the defendant's incarceration will have on his business and employees is not warranted." (Sent. Tr. at 163.)

9

This record fairly indicates to us that the district court recognized its authority to depart in an exceptional circumstance, even though family and community ties are not ordinarily relevant in determining whether to depart from an identified guideline range, see USSG § 5H1.6, but exercised its discretion not to depart. "The court has considered the defendant's argument in support of departing downward from the applicable guideline range. . . . The court concludes that . . . there are no grounds that justify a departure from the guideline range in this case." (Sent. Tr. at 164.) See United States v. Bieri, 21 F.3d 811, 818 (8th Cir.), cert. denied, 115 S. Ct. 208 (1994) (recognizing that a district court's refusal to depart "under the facts of this case" indicates an acknowledgement of authority to depart; departure simply was not justified). Thus, the district court's decision not to depart is unreviewable.

## III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10