United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1816MN

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| John D. Morken, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 23, 1997
Filed: January 8, 1998

_____

Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

FAGG, Circuit Judge.

A grand jury returned an eight-count indictment against John D. Morken, charging bank fraud, conspiracy to commit bank fraud, and making false statements to a financial institution. Morken pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 (1994), and the Government dropped the remaining charges. The applicable provisions of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) called for a minimum prison term of sixty-three months and a maximum term of seventy-eight months. Moved by a number of undeniably sincere letters from Morken's friends and neighbors, however, the district court departed downward under § 5K2.0 of the Guidelines and sentenced Morken to forty-eight months in prison, plus

community service. The United States appeals. We vacate Morken's sentence and remand for resentencing within the Guidelines range.

The district court explained that its departure decision was prompted by Morken's "longstanding record of exemplary service to [his] community." Whether the district court was relying on community service, Morken's employment-related contributions to his community, or both, the possible departure grounds in this case are all discouraged factors. See U.S.S.G. § 5H1.6 (community ties); § 5H1.11 (civic and charitable service, employment-related contributions). That being so, the district court's decision to depart was proper only if Morken's contributions were exceptional or "in some other way . . . different from the ordinary case." Koon v. United States, 116 S. Ct. 2035, 2045 (1996). Whether they were so is "determined in large part by comparison with the facts of other Guidelines cases." Id. at 2047. Although district courts possess "an institutional advantage over appellate courts in making these sorts of determinations," id., a district court may not confine its range of comparison within the compass of its own sentencing experience, see United States v. Hairston, 96 F.3d 102, 106 (4th Cir. 1996), cert. denied, 117 S. Ct. 956 (1997). On the contrary, existing reported cases represent benchmarks a district court must consider when contemplating a departure. See Koon, 116 S. Ct. at 2047; Hairston, 96 F.3d at 106. After reviewing the letters the district court received and Morken's presentence report (PSR), and after comparing Morken's case with relevant Guidelines cases, we see no basis for the district court's determination that this case warrants a downward departure. We hold the district court abused its discretion in concluding otherwise.

The letters the district court received sound three themes. Laudatory generalities aside, they praise Morken's business acumen, convey anxiety that Morken's imprisonment might injure the town's economy, and recite various services Morken has performed in and for his community. We will take these themes in turn. First, the letters portray Morken as a top-notch businessman, the hard-working and honest owner of a once-thriving cattle-brokerage operation. The facts recited in Morken's PSR--to

which Morken did not object, and which the district court adopted as its findings of fact "touching [Morken's] criminal activity"--paint a darker picture. According to the PSR, Morken's father started the business in the 1930s. Morken joined it in 1964, took it over in 1992, and took it over the cliff in 1994. Morken admitted he began kiting checks early on to create the illusion of larger bank accounts, thus inflating his purchasing power in the cattle market. He used the nonexistent funds to buy more cattle, and then cattle prices fell. Instead of facing the music, Morken kept on kiting checks. In 1994, after inflicting millions of dollars in losses through his kiting scheme, Morken put the business in Chapter 7 bankruptcy. Its assets have been liquidated. The only unusual or exceptional aspect of this scenario is the speed with which Morken managed to destroy the family business through his risky and unlawful practices, leaving his employees, lenders, and investors holding the bag. In a separate venture, Morken launched the All Phase Arena, which hosts horse shows, farm and home shows, and the like. This operation provides jobs and generates revenue for local businesses. In other words, the Arena is just like any other ongoing business. It does not evidence anything unusual about Morken's entrepreneurial skills.

At sentencing, the district court told Morken the people of his town "have come to depend on you," and "the republic and your community would be better served . . . by permitting you to aid a small, struggling rural community . . . ." These comments suggest the real ground for the district court's departure decision was economic injury to innocent third parties, a discouraged basis for departure. See U.S.S.G. § 5H1.6 (community ties); United States v. Field, 110 F.3d 587, 591 (8th Cir. 1997). In Field, the owner of a going concern asked for a downward departure to mitigate the economic harm to his family and employees. See 110 F.3d at 591. The district court in Field refused to depart, see id., and nothing marks this case as unusual compared to Field. The letters mourn the loss of income Morken's cattle operation once generated, but all that disappeared in 1994 when the business collapsed under the weight of Morken's criminal mismanagement, not in 1997 when Morken was sentenced to a reduced prison term. Morken's incarceration might, however, mean the end of the

All Phase Arena, and consequent harm to those who depend on it. Although downward departure on this ground is not ruled out as a matter of law, see id.; United States v. Olbres, 99 F.3d 28, 36 (1st Cir. 1996), the mere fact a business faces likely failure and "innocent others will . . . be disadvantaged" when its key person goes to jail is not by itself unusual enough to warrant a departure, Olbres, 99 F.3d at 36; accord United States v. Sharapan, 13 F.3d 781, 784-85 (3d Cir. 1994); United States v. Rutana, 932 F.2d 1155, 1158 (6th Cir. 1991).

On the subject of Morken's service to his community, the letters document a commendable record. In addition to being an accommodating neighbor and a good friend, Morken advised local business owners, hired young people, served on his church council, and raised money for charity. To round out the picture, Morken was the largest cattle broker in the upper midwest, with personal income topping $300,000 in 1991 and $500,000 in 1992. Although laudable, Morken's record of good works is neither exceptional nor out of the ordinary for someone of his income and preeminence in a small Minnesota town with a population barely over a thousand. See United States v. Haversat, 22 F.3d 790, 795-96 (8th Cir. 1994).

Although in most cases we give substantial deference to sentencing departures, this departure cannot be supported. We vacate Morken's sentence and remand for resentencing within the range dictated by the Guidelines.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

The record on which the district court based its decision to depart from the guidelines consisted mainly of 68 letters written by acquaintances of Mr. Morken. The letters were all highly laudatory of him, and a number of them bear directly or indirectly on what the district court characterized as service to the community. I note that U.S.S.G. § 5H1.11 provides that civic or public service, prior good works, and "employment-related contributions" "are not ordinarily relevant in determining whether" a departure is warranted. Thus, the district court may not depart unless one of these

factors is present to an exceptional degree.  <u>Koon v. United States</u>, 116 S. Ct. 2035, 2045 (1996).

I would conclude that the district court did not abuse its discretion in departing in this case.  <u>See</u> <u>id.</u> at 2048.  Although the court did not indicate precisely what aspect of Mr. Morken's community contributions it relied on in departing, the letters in the record document the unusual entrepreneurial skills that he possessed and used to good effect in providing very substantial employment to a small community.  I believe that these are the kinds of "employment-related contributions" that U.S.S.G. § 5H1.11 contemplates, and I cannot say that the court abused its discretion in concluding that such contributions were present to a very unusual degree in this case. We should be mindful of the Supreme Court's caveat that a "district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court."  <u>Koon</u>, 116 S. Ct. at 2046.

I therefore respectfully dissent from the judgment of the court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.