UNITED STATES of America, Plaintiff,

v.

Randall WILKE, Defendant.

No. 96 CR 354.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 30, 1998.

---

Sara L. Ellis, Federal Defender Program, Chicago, IL, John J. Westra, Johnson, Westra, Whittaker & Austin, Carol Stream, IL, for Randall Wilke, Defendant.

Diane MacArthur, United States Attorney's Office, Chicago, IL, for U.S.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The defendant in this case, Randall Wilke, has moved for a departure from the sentencing range set by the Sentencing Guidelines as being applicable for a typical person in his circumstances. For the reasons stated in this opinion, I have concluded that a departure downward to a level 12 is warranted in this case.

■ The first ground upon which Mr. Wilke seeks a departure is his vulnerability to abuse in prison. Mr. Wilke is a Caucasian man, 46 years old, of average height and weight. His demeanor makes him appear smaller than he is because he appears passive and meek. He is also homosexual.

Mr. Wilke pled guilty to the charge of sending in interstate commerce a videotape in which minors are depicted engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1). Mr. Wilke agreed that relevant conduct included the possession of three or more magazines or videotapes which

depicted minors in sexually explicit conduct, which conduct violates 18 U.S.C. § 2252(a)(4)(B). As part of his plea agreement Mr. Wilke agreed to forfeit various computer equipment and other material. He also agreed, at his own expense, to undergo counseling. Mr. Wilke has done so since the time of his plea.

Mr. Wilke's adjusted offense level under the Sentencing Guidelines is 16. This includes a base level of 15, the addition of two levels pursuant to § 2G2.2(b)(1), two more levels due to the stipulated conduct, and a reduction of three levels for acceptance of responsibility. Mr. Wilke had no criminal history points. Accordingly, under the Sentencing Guidelines, Mr. Wilke would receive a sentence of incarceration, having a minimum period of 21 months.

In seeking a departure based on his particular susceptibility to abuse in prison, Mr. Wilke offered to produce evidence that because of his appearance and the type of crime for which he had pled guilty, he would not be safe from abuse in federal prison. I held an evidentiary hearing at which time both Mr. Wilke and the Government put on evidence.

George Valdes testified on behalf of Mr. Wilke. Mr. Valdes is an adjunct professor at Wheaton College in Illinois. He holds a masters degree and is working on his Ph.D. dissertation in bible history. He is also a research assistant at Loyola University, and is married and has four children. He was recently named Hispanic Doctoral Student in America by the Pugh Foundation. Mr. Valdes began preparing for his present life after a religious conversion in 1989. Following his conversion, he pled guilty to various drug offenses for which he had been arrested, and testified on behalf of the United States in a drug prosecution. Before this, Mr. Valdes had been a high ranking member of the Medallin Drug Cartel. As a result of his activities, he was incarcerated in U.S. prisons approximately 10 years, serving time under two sentences at different times in eight institutions.

Mr. Valdes testified that inmates always know the crime for which another inmate is convicted. He also testified that an inmate convicted of any sexual crime involving minors is at the bottom of the pecking order among the prison population, and will be sexually molested by other inmates. He also testified that such inmates are at greater risk of even greater bodily harm, including death, because of the low esteem in which they are held by violent persons who have few persons that they can look down upon. Mr. Valdes testified that an inmate who attacked Mr. Wilke would be regarded as a hero by other inmates. Mr. Valdes concluded that he has met and observed Mr. Wilke, and that Mr. Wilke's demeanor—someone who does not look like he could fight and obviously frightened—will make him even more vulnerable.

I found Mr. Valdes to be a credible witness. The Government countered with four witnesses. Essentially, the Government's position was that sexual assault does not occur in U.S. prisons.[1] Despite this, one of the Government witnesses admitted that sexual assault is a problem in U.S. prisons. Another testified that probably not all assaults get reported and another testified that an inmate reporting an assault may become the target of further assault. A representative of the Bureau of Prisons also testified that while all institutions have protective custody arrangements, a perception of danger is insufficient to enable an inmate to enter protective custody. Furthermore, if an inmate complains of sexual assault and it is later found "not substantiated," the inmate will be released back into the general population. One Government witness testified that beds are available in a special program for sexual deviants at Butner, but that inmates in the program are housed in the general prison population, which includes inmates with psychological problems of all types, including some who are psychotic and others with "serious abnormalities."

To the extent that the Government position was that sexual assault does not occur in

---

**1.** One witness, a probation officer, testified that he had never been told that any of his clients had been assaulted and therefore did not believe it happened. Another, the chief psychologist at FCI Butner in North Carolina, did say sexual assault was a problem, despite a government exhibit which stated that in the entire U.S. penal system, it had found only six cases of sexual assault in 1996.

**830**

U.S. prisons, I find it incredible, based not only on Mr. Valdes' testimony, but on Government witness Dr. Dudley Terrell's admission that it is a problem.[2]

Particular vulnerability to physical abuse is an established basis for departing from the sentencing range set by the Sentencing Guidelines. *Koon v. United States,* 518 U.S. 81, 111–12, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 39 (1996); *United States v. Graham,* 83 F.3d 1466, 1481 (D.C.Cir.1996); *United States v. Lara,* 905 F.2d 599 (2d Cir.1990).

The Government argues that the fact that a defendant may be more likely to be subject to sexual or other physical abuse because of his crime is not a basis for departure from the Sentencing Guideline range set by the Sentencing Commission. Various cases have stated that one's status as a member of a particular group, whether law enforcement, or child pornographer, cannot alone provide sufficient reason for departure from the otherwise applicable guideline range. *E.g., United States v. Kapitzke,* 130 F.3d 820 (8th Cir.1997); *United States v. Rybicki,* 96 F.3d 754 (4th Cir.1996).

The present case differs from these situations in two respects. First, Mr. Wilke is likely to be exposed to extraordinary punishment not just because of his crime but because of his sexual orientation and his passive, meek demeanor. In addition, Mr. Wilke has presented credible testimony that substantiates his fear that he will be exposed to assault in prison.[3] Mr. Wilke's motion for a downward departure from the applicable Guideline range based on his vulnerability to abuse in prison is therefore granted.

 Mr. Wilke also seeks a departure from the general Sentencing Guideline range

based on exceptional community and charitable activities. Exceptional community or charitable activities may provide a basis for departure from the Sentencing Guidelines. *E.g., United States v. Grandmaison,* 77 F.3d 555, 564 (1st Cir.1996); *United States v. Canoy,* 38 F.3d 893, 906 (7th Cir.1994).

Mr. Wilke, based not only on his own submissions but that of many community members, has played an important role in his community. Of particular significance are his contributions to the bi-annual St. Charles Art and Music Festival in St. Charles, Illinois. Mr. Wilke has in that connection created a theatre workshop and coordinated the entire program, producing and directing summer plays and spending in excess of 200 hours per summer during performance years. Mr. Wilke has contributed many hours to his community in other theatre activities as well. In addition to these activities, supporters of Mr. Wilke say he has spent many hours working with the Interfaith Food Pantry, performing concerts with the Mostly Madrigal Choir to benefit Kane County Casa, an organization that helps abused children, helping with an auction for Kane County Casa, the annual St. Charles Scarecrow Festival and the Chamber of Commerce Christmas celebration. The extent of Mr. Wilke's contribution is attested to by 28 letters written on his behalf. The conclusion that I draw from these letters is that Mr. Wilke has indeed devoted a very substantial part of his life to his community and to giving to others.

I conclude that Mr.· Wilke's community activities do fall outside the heartland of ordinary community activity. Accordingly, based on his extraordinary community activities, a departure downward from the Sentencing Guideline range is appropriate.[4]

---

**2.** *This is confirmed as well by Government Exhibit 7, which describes a program to prevent sexual assault.*

**3.** The Government argues that at most Mr. Wilke's evidence shows that all child pornographers are subject to being attacked in prison, and that accordingly, there is no room for departure from the Sentencing Guidelines. For the reasons stated in this opinion I find that Mr. Wilke's circumstances differ from that of the "average" child pornographer in ways that take him out of the "heartland" of child pornographers. However, I also note that if the credible evidence

showed that the Bureau of Prisons cannot protect any person convicted of the offense for which Mr. Wilke pled guilty from serious assault, the Eighth Amendment to the U.S. Constitution would take precedence over the Sentencing Guidelines.

**4.** The Government has argued that Mr. Wilke's community activities, many of which involve children, are in themselves "criminal" in that he probably hoped to entice children into illicit sexual activity. The Government's arguments are really inappropriate in this case. The Government justifies its arguments based on a 20–year–

▮ Mr. Wilke finally argues that even if either of the factors noted in this opinion were insufficient in themselves to warrant a departure from the applicable Guideline range, they may be combined and as such, justify a departure. While I have concluded that a departure is appropriate both for Mr. Wilke's extraordinary contributions to his community and because of the potential for physical abuse, I also agree that if they were not sufficient in themselves the "unique combination" of these factors is a mitigating circumstance that takes Mr. Wilke's case outside the heartland of the Guideline range. *E.g., United States v. Bowser*, 941 F.2d 1019 (10th Cir.1991); *United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991).

I conclude that Mr. Wilke is entitled to a departure from the otherwise applicable Sentencing Guideline range in this case. I conclude that Offense Level 12 will adequately take into account both the nature of Mr. Wilke's offense and the factors that were intended to be considered by the Sentencing Guidelines.

old case in which Mr. Wilke pled guilty to fondling a child. But there is no evidence that Mr. Wilke has abused any child in the last 20 years. There have been no charges against Mr. Wilke. In addition, following his arrest in this case (apparently accompanied by widespread local publicity), the Government interviewed all or many of Mr. Wilke's neighbors. It found no evidence that Mr. Wilke had abused any child. In addition, many of the letters written on Mr. Wilke's behalf are from parents of children who have been around Mr. Wilke or from adults who themselves spent time with Mr. Wilke when they were children. All of them say that Mr. Wilke has never acted inappropriately with children. The Government also justifies its arguments based on fictional writings by Mr. Wilke. Fic-

tion, and imagination, however offensive the subject may be to many of us, do not equate with actual behavior. The Government also argues that I should not consider Mr. Wilke's community involvement because he has not been able to undertake any community activities since his arrest. At the time of his arrest, the Government successfully argued that based on the alleged danger to the community, Mr. Wilke should be prohibited from engaging in any activity involving children. The fact that the Government's fears—which have not been substantiated by evidence—were allowed to terminate Mr. Wilke's activities for a time do not erase the contribution Mr. Wilke has made and can be expected to continue to make to his community.