UNITED STATES of America,
Plaintiff–Appellant,

v.

Randall WILKE, Defendant–Appellee.

No. 98–1488.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1998.

Decided Sept. 16, 1998.

Diane MacArthur (argued), Office of the United States Attorney, Chicago, IL, for plaintiff–appellant.

John J. Westra, Alfred S. Lee (argued), Johnson, Westra, Whittaker & Austin, Carol Stream, IL, for defendant–appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Randall Wilke pled guilty to one count of violating 18 U.S.C. § 2242(a)(1), which prohibits the transporting of child pornography through interstate commerce. Application of the 1995 version of United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") resulted in a sentencing range of 21–27 months. Wilke moved for a downward departure from this range on grounds that included his vulnerability to abuse in prison and his extraordinary contributions as a volunteer in the local community. The district court accepted these arguments and departed from the Guidelines' range. We vacate Wilke's sentence and remand for resentencing.

## I. History

Based on information from the FBI's office in New Jersey that Wilke exchanged child pornography via mail and computer with a man in New Jersey, the FBI in Chicago obtained a search warrant for Wilke's residence in St. Charles, Illinois. While executing the search warrant on June 6, 1996, the

FBI seized magazines and periodicals containing child pornography, over 50 videotapes and still photographs containing child pornography, and 59 computer disks containing over 203 images of boys engaged in sexual acts. The FBI also interviewed Wilke at this time. Wilke admitted that he was a closet pedophile and that he obtained pleasure from viewing his child pornography collection.

On September 24, 1996, a grand jury charged Wilke with violating 18 U.S.C. §§ 2252(a)(1), 2252(a)(4)(B), and 2253. The indictment alleged that Wilke possessed and distributed child pornography. On December 20, 1996, Wilke entered into an agreement with the government in which he pled guilty to distributing child pornography. During the change of plea proceeding, Wilke also stipulated pursuant to U.S.S.G. § 1B1.2 that he possessed child pornography. The district court accepted Wilke's change of plea.

After the change of plea proceeding, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which contained its calculation of Wilke's applicable sentencing range. The PSR concluded that Wilke had a total offense level of 16 and a corresponding sentencing range of 21–27 months. These calculations were consistent with those set forth in Wilke's plea agreement.

On May 21, 1997, the district court commenced Wilke's sentencing hearing. Although the PSR was not disputed at the hearing, Wilke requested a sentence of probation. After the court noted that Wilke had not filed a downward departure motion, the district court continued the hearing to allow Wilke an opportunity to file such a motion. At the close of the hearing, the court commented on the number of letters written by members of the St. Charles community on Wilke's behalf and questioned whether, "leaving the guidelines aside," anything would be added "by sending him to a prison where it would be a pretty rough time." Sent. Tr. Vol. 2 at 30, *United States v. Wilke*, 995 F.Supp. 828 (N.D.Ill.1997).

After Wilke filed a motion for sentencing departure raising grounds that included vulnerability to abuse in prison and involvement in charitable activities in the local community, the parties appeared before the district court on August 1, 1997. At Wilke's request, the district court agreed to hear testimony on the subject of Wilke's vulnerability to abuse in prison, and the court asked the government to file a submission discussing the arrangements the Bureau of Prisons ("BOP") could make to ensure that Wilke was not subject to abuse. The district court then expressed a "strong ... belief among many federal judges that a person with Mr. Wilke's characteristics and with the offense to which he has pled guilty is liable to be victimized." Sent. Tr. Vol. 4 at 5. The court requested additional information in order to have "something more than a belief on which to act." *Id.* at 4. Later in the hearing, during a discussion about whether Wilke's physical characteristics differed from the characteristics of defendants in other cases involving claims of vulnerability to abuse in prison, the district court noted that it had "to consider as well how it all related in terms of his safety with the crime of which he is charged." *Id.* at 8.

On November 17, 1997, the district court held an evidentiary hearing. Wilke called one witness, George Valdes, who testified that he had been incarcerated in federal institutions for drug related offenses and that, in his opinion, inmates convicted of crimes similar to Wilke's "would be at the bottom of the crime ladder." Sent. Tr. Vol. 6 at 10. Valdes elaborated, "[a]nything related to a sexual crime involving a minor is the lowest thing in the Bureau of Prisons, is the lowest thing in any criminal mind." *Id.* He opined that the BOP would not be able to keep this type of sex offender safe. *See id.* at 18. Valdes also testified that any inmate who harmed a sex offender was considered a "hero" and that inmates would do whatever they could to "make sure that [a sex offender] doesn't get out [of prison]." *Id.* at 16, 21. In response to a question by Wilke's attorney as to what would happen to Wilke "given [Wilke's] physical characteristics and his crime," *id.* at 18, Valdes stated that Wilke would be abused, raped, and turned into a sex slave. *See id.* at 18–19. In his opinion, Wilke had no street sense and that even if he

were not a sex offender he would be in trouble because he looked scared and not like someone who could fight. Wilke was forty-six years old, stood 5'11" tall, and weighed 160 pounds. He is homosexual.

On cross-examination, Valdes stated that he did not know much about the circumstances of the offenses of which Wilke had been accused or convicted. Valdes also admitted that he had not spent any time in a sex-offender unit and that he was never incarcerated at the BOP facilities in Rochester, Waseca, Springfield, or Sandstone. (According to the government, these facilities are the low security institutions in the North Central Region to which Wilke would likely have been assigned.) Finally, Valdes testified that it had been almost two years since he had been in the prison system and that he was not aware of any recent measures the BOP had taken to protect individuals convicted of sex-related offenses.

The government called four witnesses: (1) Terry Childers, a probation officer in the Northern District of Illinois who specializes in sexual abuse cases; (2) Lori Colley of the BOP's North Central Region who assigns defendants from the Northern District of Illinois; (3) Dr. Dudley Terrell, Chief Psychologist at the BOP's Butner, North Carolina facility; and (4) Dr. Andres Hernandez, the Director of the Sex Offender Treatment Program at Butner. These witnesses testified about the facilities to which Wilke would be designated, the presence and physical characteristics of inmates convicted of offenses involving child pornography at those facilities, the frequency of abuse in the BOP system, the precautions taken by the BOP to prevent sexual assault, the type of inmates in the Butner sexual offender treatment program, and the availability of the Butner program to Wilke.

The government twice clarified at the hearing that the BOP witnesses were not called to testify that sexual abuse never occurred in the BOP system. It also acknowledged that an inmate might not report an incident of sexual assault to BOP officials. The witnesses testified, however, that in their experience inmates convicted of the same type of offense as Wilke's survived in the general prison population without reported incidents of abuse and that Wilke could be protected from sexual abuse once placed in the BOP system.

On January 30, 1998, the district court sentenced Wilke. With regard to Wilke's claim of vulnerability to abuse in prison, the court stated that credible evidence presented in the evidentiary hearing convinced it that Wilke would be extremely vulnerable in a prison setting. In reaching this conclusion, the court specifically cited Valdes' testimony as believable and the government's presentation as unhelpful and unreliable. *See* Sent. Tr. Vol. 5 at 6. According to the district court, Wilke is likely to be exposed to extraordinary punishment because of his crime, his sexual orientation, and his passive, meek demeanor. *See United States v. Wilke*, 995 F.Supp. 828, 829 (N.D.Ill. 1998).

The district court next considered Wilke's contributions to the community. The district court described 28 letters submitted on Wilke's behalf as "attest[ing] to the extraordinary efforts Mr. Wilke ha[d] made on behalf of the St. Charles Art and Music Festival as well as a wealth of other community activities." Sent. Tr. Vol. 5 at 6. The letters referred to Wilke's work: (1) with several local theatrical productions; (2) with the crew of second through fifth-graders at an elementary school; (3) organizing meals and rides for the children of an ill friend; (4) as the assistant director of a school district musical; (5) with the biannual St. Charles Art and Music Festival; (6) with local fundraising events; (7) with a madrigal singing group which performs concerts to benefit an organization which helps abused children; and (8) with an interfaith food pantry. The district court found "that Mr. Wilke's contributions to the community are extraordinary and, therefore, not within the heartland of charitable or of community contribution that the sentencing guidelines have considered." *Id.* at 11–12. The court, therefore, departed downward from the Guidelines' recommended range for his extraordinary community activities. *See Wilke*, 995 F.Supp. at 831.

The district court departed four levels from the PSR's recommended range of 21–27 months to a range of 10–16 months. It sentenced Wilke to five months of incarceration and to a two year period of supervised release, recommending that Wilke be allowed to serve his five months of incarceration in community confinement. It also ordered that Wilke spend eight months of the period of supervised release in home confinement. Finally, the district court imposed a $2,500 fine.

## II. ANALYSIS

■ The government challenges the district court's decision to depart from the Guidelines. Specifically, it questions whether the court erred by relying on the nature of Wilke's offense, his sexual orientation, and his demeanor in deciding that Wilke is vulnerable to abuse in prison and whether the court erred in finding Wilke's charitable acts were extraordinary and by failing to consider whether Wilke's charitable acts were motivated by a desire to entice children into illicit sexual activity. We review the district court's decision for an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Otis*, 107 F.3d 487, 490 (7th Cir.1997). In doing so, we accept the district court's findings of fact supporting the departure unless clearly erroneous, *United States v. Carter*, 122 F.3d 469, 472 (7th Cir.1997), but a district court "by definition abuses its discretion when it makes an error of law," *Koon*, 518 U.S. at 100, 116 S.Ct. 2035.

■ The government makes a series of arguments that the district court abused its discretion in reducing Wilke's sentence for his vulnerability to abuse in prison. While vulnerability to abuse is an accepted basis for departing from the recommended sentencing range, *see Koon*, 518 U.S. at 112, 116 S.Ct. 2035; *United States v. Drew*, 131 F.3d 1269, 1271 (8th Cir.1997), this departure is reserved for extraordinary situations, *see United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir.1997); *United States v. Graham*, 83 F.3d 1466, 1481 (D.C.Cir.1996), *cert. denied*, ⸺ U.S. ⸺, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997); *United States v. Maddox*, 48 F.3d 791, 797–98 (4th Cir.1995). "[T]o qualify for a downward departure, a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse." *Graham*, 83 F.3d at 1481 (citing *United States v. Lara*, 905 F.2d 599, 602–03 (2d Cir.1990)). Mere membership in a particular class of offenders that may be susceptible to abuse in prison does not merit a departure for vulnerability to abuse in prison. *See Kapitzke*, 130 F.3d at 822; *United States v. Rybicki*, 96 F.3d 754, 759 (4th Cir.1996). Instead, the district court must make an individualized determination. *See Koon*, 518 U.S. at 112, 116 S.Ct. 2035 (confirming that district court could depart for vulnerability given " 'extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers' ") (quoting *United States v. Koon*, 833 F.Supp. 769, 785–86 (C.D.Cal. 1993)).

■ The government claims that the district court erred as a matter of law by considering the nature of Wilke's crime in evaluating his vulnerability to abuse. At the August 1, 1997, hearing, the district court expressed its belief that "a person with Mr. Wilke's characteristics and with the offense to which he has pled guilty is liable to be victimized." Sent. Tr. Vol. 4 at 5. During the November 17, 1997, evidentiary hearing, Wilke's witness, George Valdes, explained at length that Wilke would be abused and raped because inmates are repulsed by sexual crimes involving minors and punish other inmates convicted of those crimes. *See* Sent Tr. Vol. 6 at 18. Finally, in its sentencing memorandum and order, the district court departed downward for Wilke's vulnerability based on his crime together with his sexual orientation and passive, meek demeanor. *See Wilke*, 995 F.Supp. at 829. We agree with the government that a district court may not rely on the nature of a defendant's offense as a factor justifying a sentencing departure for vulnerability to abuse in prison. If we permitted defendants convicted of distributing child pornography to use the crime as a reason to justify a departure from the range recommended by the Guide-

lines, then we would eviscerate the recommended range for this crime and undermine the goals of the Sentencing Reform Act of 1984. *See Kapitzke,* 130 F.3d at 822 (rejecting district court's reliance on the nature of defendant's offense of possessing child pornography as making him eligible for departure); *see also Rybicki,* 96 F.3d at 759 (rejecting district court's reliance on the effects of prison on law enforcement officers as a class in considering vulnerability). It seems illogical to us that the crime on which the Sentencing Commission based the recommended range may be a factor in justifying a departure from that range.

Under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, a district court may depart downward for mitigating circumstances that *remove* a case from the heartland of cases for that crime. *See* U.S.S.G. Ch. 1. Pt. A. There would be no heartland of cases if the district court uses the nature of the offense in evaluating whether mitigating circumstances exist—the same factor that established the sentencing range would also be a factor in justifying a departure from that range. By considering the nature of the offense, it would be possible to establish an automatic departure from the recommended range for the entire class of offenders. This approach is in direct conflict with the Supreme Court's recognition in *Koon* that across-the-board acceptance or rejection of a factor by a sentencing court would "transgress the policymaking authority vested in the [Sentencing] Commission." 518 U.S. at 106, 116 S.Ct. 2035. It also disregards the efforts of other courts to reserve this departure for extraordinary situations. *See Kapitzke,* 130 F.3d at 822; *Graham,* 83 F.3d at 1481; *Maddox,* 48 F.3d at 797–98. Thus, the offense that establishes the recommended range cannot be used as a basis for a departure from it. The district court abused its discretion by considering the nature of Wilke's offense in determining whether he is extremely vulnerable to abuse in prison.[1]

The government also contends that the district court erred in its vulnerability determination by considering that Wilke is homosexual without evidence before it establishing that homosexuals as a group are vulnerable to abuse in prison and by relying on subjective statements about Wilke's demeanor even though the court described him as being of average height and weight. On remand, the district court may consider Wilke's sexual orientation and demeanor. *See* U.S.S.G. § 5H1.4; *Maddox,* 48 F.3d at 798 (confirming that district court may consider defendant's demeanor and appearance but vacating sentence of defendant who was not extraordinarily vulnerable); *Lara,* 905 F.2d at 603 (upholding departure when defendant's diminutive size, immature appearance, and bisexual orientation made him a potential candidate for victimization). If the district court elects to do so, however, it must provide a sufficient explanation of the reasons given and the nexus of the reasons to vulnerability to abuse in prison, thereby enabling appropriate appellate review of its decision.

Finally, the government contends that the district court abused its discretion in departing downward for Wilke's community contributions because the district court did not consider Wilke's motives for volunteering. Though community ties and charitable good works are not ordinarily relevant in determining whether a defendant merits a departure from the Guidelines' recommended range, district courts may consider these factors in extraordinary cases. *See* U.S.S.G. §§ 5H1.6 (community ties), 5H1.11 (charitable services); *Koon,* 518 U.S. at 94, 116 S.Ct. 2035; *United States v. Canoy,* 38 F.3d 893, 906–07 (7th Cir.1994). If the district court chooses to consider these factors on remand, the government is correct that a district court should not reward a defendant for community service in which the defendant is able

---

**1.** If inmates who committed sexual crimes involving minors are uniquely vulnerable to abuse, then an appropriate response is for the BOP to protect them from the general population or to remove them from the general population and place them in facilities like the BOP's Butner, North Carolina, facility where the Sex Offender Treatment Program is housed. In other words, if abuse in prison is a problem for an entire class of offenders, then the remedy is to alter their conditions of confinement. The remedy is not to disregard the Guidelines' recommended range for that class of offenders.

755

to further a criminal intent or that is the result of his ill-gotten gains. *See United States v. McHan*, 920 F.2d 244, 248 (4th Cir.1990); *see also United States v. Morken*, 133 F.3d 628, 630 (8th Cir.1998) (discounting community service because defendant's wealth and social position enabled him to contribute time and financial resources without personal sacrifice); *United States v. Haversat*, 22 F.3d 790, 796 (8th Cir.1994) (same).

### III.

Because the district court abused its discretion in relying on the nature of Wilke's offense in departing from the Guidelines' recommended range and because we cannot say with any certainty that the district court would have imposed the same sentence absent its reliance on this invalid factor, we VACATE Wilke's sentence and REMAND for resentencing. On remand, Circuit Rule 36 shall apply.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

I agree that this matter should be remanded because, in granting a downward departure, the sentencing judge may have inappropriately taken into account the nature of the offense. The majority's discussion of this issue is generally apt.

However, the trial judge was proceeding entirely within her discretion in concluding that Wilke's passive, meek demeanor made him a choice target for prison abuse. The government would prefer height and weight as relevant characteristics because they are objective, "tangible." But in *Koon* the government argued that "[s]usceptibility to prison abuse ... never should be considered because the degree of vulnerability to assault is *an entirely subjective judgment*, and the number of defendants who may qualify for that departure is virtually unlimited." 518 U.S. at 106, 116 S.Ct. 2035 (emphasis added and internal quotation marks and citations omitted). The Court responded that "[t]hose arguments, however persuasive as a matter of sentencing policy, should be directed to the [Sentencing] Commission. Congress did not grant the federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." *Id.* This language puts subjective findings on demeanor clearly within the purview of the trial judge and nothing more need be done here with this dimension of the case. It seems to me that Judge Bucklo has made more than adequate findings with respect to Wilke's demeanor and that further elaboration (as vaguely suggested by the majority) is unnecessary.

In the matter of Wilke's community service, the majority's observations are simply unacceptable. The majority seems to be saying that in organizing and participating in numerous community events involving young people, Wilke was motivated by a desire to exploit those occasions for illicit sexual purposes. This, of course, is the purest and most objectionable speculation, there being no showing that Wilke's community contributions had the slightest relation to sexual misdeeds. *See* 995 F.Supp. 828, 830–31 n. 4 (N.D.Ill.1998). The majority's ominous reference to "further[ing] a criminal intent," *ante*, is wholly unsupported by the record before us. (The reference to "ill-gotten gains" is simply baffling. *Id.*) In fact, the broad and spontaneous outpouring of praise for his social contributions is strong evidence not only that they were not connected with disreputable activities but that members of the community who knew him best did not perceive any questionable motivations.

Students of psychology have long noted the phenomenon of sublimation, where baser instincts can find expression in praiseworthy acts. It seems to me that nothing can be gained by casting a shadow over constructive activity because one can surmise a link to deviant impulses deep in the unconscious. There is absolutely no reason to denigrate a groundswell of community appreciation for good works that is as extraordinary as the one before us.

Judge Bucklo conducted an extensive hearing, made her own well-supported determination of credibility, provided a careful analysis and wrote a well-documented published opinion. She exercised her considerable discre-

tion in a fully appropriate way.  I believe that she would be more than capable of again addressing Wilke's sentence, setting aside considerations of the nature of the offense, and coming to a balanced and fair conclusion. With respect, therefore, I would remand the case to her on that basis.