In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 22-2061

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON A. PRICE, also known as JAZZ PRICE

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:11-cr-00122-wmc-1 — **William M. Conley**, *Judge.*

———————

SUBMITTED FEBRUARY 7, 2023 — DECIDED OCTOBER 23, 2023

———————

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge*. One in five transgender women report being incarcerated.[1] And nearly 40% of incarcerated transgender women report being sexually assaulted

———

[1] *See* Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, at 163 (2011), https://www.thetaskforce.org/wp-content/uploads/2019/07/ntds_full.pdf.

while incarcerated, compared to 4% of all incarcerated peo-
ple.[2] These statistics only scratch the surface of petitioner Jazz
Price's lived experiences as a transgender woman in federal
detention. That is why, at her supervised release revocation
hearing, Price asked the district court to consider the height-
ened risk of sexual assault she would face in prison. The dis-
trict court acknowledged the risk of harm to Price, imposed a
prison sentence slightly below the statutory maximum, and
recommended that the Bureau of Prisons consider Price's
safety and gender transition when selecting her incarceration
facility.

On appeal, Price argues that the district court committed
procedural error because it failed to account for her unique
vulnerability. Because the sentencing transcript demonstrates
that the district court considered Price's concerns, we affirm.

# I

In 2011, Price pleaded guilty to being a felon in possession
of a firearm in Wisconsin. The district court sentenced her un-
der the Armed Career Criminal Act (ACCA) to 15 years' im-
prisonment, followed by three years' supervised release. The
BOP designated Price to serve her sentence in federal

---

[2] *See* Allen J. Beck, U.S. Dept. of Justice, Bureau of Justice Statistics,
*Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12*, at 8
(May 2013) http://www.bjs.gov/content/pub/pdf/svpjri1112.pdf; Beck,
*Supplemental Tables: Prevalence of Sexual Victimization Among Transgender
Adult Inmates*, Table 1 (Dec. 2014) http://www.bjs.gov/con-
tent/pub/pdf/svpjri1112_st.pdf.

penitentiaries—the highest level security facilities second only to the maximum-security ADMAX in Florence, Colorado.[3]

The penitentiaries proved to be dangerous for Price—first as a gay man (before transitioning) and later as a transgender woman. Within two months of incarceration, the BOP placed Price into a special housing unit (the "SHU") for protective custody.[4] But that failed to keep Price safe; prison officials found her in the SHU with lacerations and bruises on her face and throat. In 2014, Price was hospitalized multiple times due to violence she suffered from other inmates. For nearly a decade, Price was transferred from penitentiary to penitentiary, each time based on a finding that she needed to be transferred to a facility that could meet her security and programming needs. At each facility, she spent most of her time in the SHU—sometimes for protection, but often for discipline. The disciplinary issues frequently stemmed from her belief that she had to fight and "be tough" to protect herself in prison.

---

[3] BOP facilities fall into four categories: minimum security Federal Prison Camps, low security Federal Correctional Institutions, medium security Federal Correctional Institutions, and high security United States Penitentiaries. Florence ADMAX is an administrative maximum security penitentiary. *See* U.S. Dept. of Justice, Fed. Bureau of Prisons, *About the Federal Bureau of Prisons*, at 2 (June 2015) https://www.bop.gov/resources/pdfs/ipaabout.pdf; U.S. Dept. of Justice, Fed. Bureau of Prisons, *About Our Facilities*, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited Sept. 27, 2023).

[4] BOP facilities have special housing units for temporary disciplinary or administrative segregation and protective custody. Inmates placed in the SHU have restricted access to others. U.S. Dept. of Justice, Fed. Bureau of Prisons, *Program Statement: Special Housing Units*, at 1–4 (Nov. 2016) (https://www.bop.gov/policy/progstat/5270.11.pdf.

In 2017, Price filed a pro se motion to vacate her sentence and a habeas petition under 28 U.S.C. § 2255 seeking the same relief. Following a retroactive change in the law,[5] the district court granted Price's request and resentenced her without the ACCA enhancement. The court reduced her sentence to "time served," followed by three years of supervised release.

After Price's release from prison, she worked full-time at a factory and obtained substance abuse therapy. But she also violated multiple terms of her supervised release: she lost her placement at a halfway house because of rule infractions, started using drugs, missed drug tests, and eventually fled from Wisconsin in August 2020 after stabbing a man in what she says was self-defense.[6] A warrant was issued for Price's arrest, and in March 2022, the U.S. Marshals found and arrested Price in Iowa. She explained that she spent the 19 months between her fleeing and her arrest working odd jobs in exchange for food and shelter in Minnesota, Texas, and Iowa.

At her revocation hearing in May 2022, Price conceded that the district court had a sufficient basis to return her to prison but asked the court not to do so. Price's principal argument was that, considering her well-documented personal

---

[5] *See United States v. Franklin*, 387 Wis. 2d 259, 928 N.W.2d 545 (Wis. 2019) (answering a question certified by our court about burglary under Wisconsin law), *United States v. Franklin*, 895 F.3d 954 (7th Cir. 2018) (certifying the question), and 772 F. App'x. 366 (7th Cir. 2019) (final disposition holding that Wisconsin burglary convictions do not qualify as prior convictions for "violent felonies" under the Armed Career Criminal Act).

[6] Wisconsin brought a criminal action against Price for the stabbing but dismissed all charges in 2022 without prejudice. *See State v. Jason A. Price*, No. 20-CF-240 (Wis. Cir. Ct. 2022).

history of suffering abuse in prison and the high rates of transgender prisoner sexual assault, remand would mean only one thing for Price—certain harm in prison. She asked the court to consider this profound risk when deciding the appropriate next step in her case. The court recognized the risk to Price but decided that a custodial sentence was necessary because of Price's violations of her supervised release terms. The court sentenced Price to 18 months of imprisonment (slightly below the statutory maximum of 24 months and the advisory guidelines range of 21 to 24 months), and 18 months of supervised release.

## II

On appeal, Price argues that the district court committed procedural error because it failed to consider the inevitable harm she would face as a transgender woman in prison. As Price frames the error: "[R]ather than factoring in Price's unusual susceptibility to abuse in the actual sentence, the district court simply recommended that Price be placed at a medical facility." That recommendation, as Price sees it, means the sentence imposed rests on mere speculation since judges have no authority over BOP designation.

Framing aside, Price's procedural challenge is one we frequently address: whether the district court considered a defendant's principal arguments. *See, e.g.*, *United States v. Yankey*, 56 F.4th 554, 557–59 (7th Cir. 2023). "We have long held that district courts are required to directly address a defendant's principal arguments in mitigation that have legal merit." *United States v. Williams*, 887 F.3d 326, 328 (7th Cir. 2018) (citing *United States v. Donelli*, 747 F.3d 936, 937 (7th Cir. 2014), and *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005)).

At a revocation hearing, which is less formal than a sentencing hearing, "a defendant is entitled to present mitigation arguments, … and district courts must approach revocation hearings with an open mind and consider the evidence and arguments presented before imposing punishment." *United States v. Dawson*, 980 F.3d 1156, 1165 (7th Cir. 2020) (cleaned).

Price's mitigation argument that she would be subject to great harm in prison and therefore warranted a non-custodial sentence had legal merit. *See Koon v. United States*, 518 U.S. 81, 106–09, 111–12 (1996) (recognizing "susceptibility to abuse in prison" as a permissible consideration for a sentencing court). Indeed, we have previously recognized that a sentencing court can make an "individualized determination" about a defendant's "vulnerability to abuse in prison." *United States v. Wilke*, 156 F.3d 749, 753–54 (7th Cir. 1998) (holding that on remand, "the district court may consider [the defendant's] sexual orientation and demeanor").

After reviewing the record, we are satisfied that the district court considered Price's principal mitigation argument. The court addressed it from the outset:

> I'm not discounting that your client presents a number of challenging issues for any institution that would hold her … I am willing to make as strong a reference as I can to the Transgender Executive Council[7] within the Bureau of

---

[7] The Transgender Executive Council (TEC) is the BOP's official decision-making body on all issues affecting the transgender prison population. When BOP receives information that an individual entering BOP custody is transgender or intersex, the matter is referred to the TEC for review. The TEC then considers a multitude of factors in assigning a facility. These factors include, but are not limited to, the entering inmate's (1)

> Prisons to try to find an appropriate designa-
> tion. I'm happy to hear from your client as to
> where she stands in her efforts at transition. I'm
> not discounting the challenges that she faces
> both inside prison and outside prison.

*See* Revocation Hr'g. Tr. at 7:19–25. The court then engaged
with Price's counsel and acknowledged that it heard counsel's
concerns for Price's safety. The court explained that although
it "could easily justify a two-year sentence," it was not in-
clined to do so for all the reasons counsel indicated. *Id.* at 9:3–
10:9. Finally, the court engaged in a colloquy with Price her-
self, and explained that although it could not guarantee a
placement in a medical facility where Price would be safe,
Price could not entirely avoid a custodial sentence on that ba-
sis given her supervised release violations.

Price argues that, to avoid procedural error, the district
court had to "consider the realities of what Ms. Price will suf-
fer upon being returned to prison" and then use its broad dis-
cretion in one of three ways by saying: (1) "I believe that you
will spend your whole time in solitary confinement and be
constantly harassed and victimized, and consistent with that
belief, I think 18 months is appropriate;" (2) "I would nor-
mally sentence this conduct for a person with your criminal
history to 24 months, but given the difficulties you'll face in

---

security level, (2) criminal and behavioral/disciplinary history, (3) current
gender expression, (4) programming, medical, and mental health
needs/information, (5) vulnerability to sexual victimization, and (6) likeli-
hood of perpetrating abuse. *See* U.S. Dept. of Justice, Fed. Bureau of Pris-
ons, *Transgender Offender Manual* (Jan. 13, 2022),
https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

custody, I am going to give you 18 months;" or (3) "I would normally sentence this conduct to 18 months, but I am convinced that given the threats to your safety that a combination of a short prison sentence and community confinement is appropriate." According to Price, any one of these approaches "is consistent with the sentencing court's discretion and the fact that 'defendants subjected to repeated physical or sexual assault are, in effect, punished more severely than others.'"

But the district court did acknowledge the realities of danger for Price in the BOP and did choose at least one, perhaps two, of the very options Price posits above, namely options 1 and 2. When addressing Price's counsel before imposing the sentence, the district court said it did not intend to "throw the book" at Price for the reasons counsel had just highlighted about the unique harm she faced in prison, but the sentence imposed did have to "reflect her conduct." *Id.* at 10:1–9. When the court imposed the sentence, it stated: "The intent of my sentence is to hold the defendant accountable for her violations, to protect the community, and promote specific and general deterrence, *notwithstanding both her counsel and her statements as to the potential negative consequences of holding her accountable for her own conduct.*" *Id*. at 24:5–10 (emphasis added). The "notwithstanding" clause can only be understood as a reference to Price's principal mitigation argument.

In sum, the district court addressed Price's particular vulnerability as a transgender woman in prison and exercised its discretion in imposing a prison sentence. A different judge might have elaborated more, or weighed the heightened risk to Price differently and afforded greater relief. But the standard for remanding a district court's discretionary

determination is not met where the court addresses the defendant's meritorious and principal arguments in mitigation.

AFFIRMED.