**UNITED STATES of America**

v.

**Reed ARTIM.**

**Criminal No. 96–202.**

United States District Court,
D. New Jersey.

Nov. 1, 1996.

Donna Krappa, Assistant United States Attorney, United States Department of Justice, United States Attorney, District of New Jersey, Newark, NJ, for the United States.

Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger & Vecchione, A Professional Corporation, Newark, NJ, for Defendant, Reed Artim.

## OPINION

ORLOFSKY, District Judge:

On October 25, 1995, Defendant, Reed Artim, was arrested and charged with the receipt of child pornography, in violation of 18 U.S.C. § 2252(a). On April 26, 1996, pursuant to a written plea agreement with the Government, Mr. Artim entered a plea of guilty to a one count Information charging the same offense.

Contained in the plea agreement are the following stipulations between the Defendant and the Government: (1) The base offense level is 15; *see* U.S.S.G. ("Guidelines") § 2G2.2;[1] (2) because the material received by the Defendant did not involve a minor under the age of twelve, a two level increase in base offense level is not appropriate; *see* Guidelines § 2G2.2(b)(1); and (3) because the Defendant has demonstrated a recognition and affirmative acceptance of responsibility for the offense, a downward adjustment of two levels for acceptance of responsibility is appropriate. *See* Guidelines § 3E1.1(a). Thus, the parties agree that the base offense level for Mr. Artim's offense is 13.

The applicable guideline incarceration range for a level–13 offense is 12 to 18 months. *See* Guidelines, Ch. 5, Part A. Although neither party disputes the applicable guideline range, Defendant has filed a motion for a downward departure from the applica-

---

**1.** The Sentencing Guidelines, as amended November 1, 1996, increase the base offense level for the Defendant's offense from 15 to 17. Although the Defendant's sentencing date has been adjourned to November 1, 1996, the parties have stipulated to the use of the Guideline range, effective, November 1, 1995, since the Defendant's sentencing was initially scheduled for a date prior to November 1, 1996.

Accordingly, all references made to the Guidelines in this Opinion will be to those in effect November 1, 1995.

ble guideline range of 12 to 18 months to a non-custodial sentence. For the reasons that follow, this Court will deny Defendant's motion for downward departure.

## I. Discussion

Section 3553(b) of Title 18 permits a sentencing judge to depart from the ranges established by the Sentencing Guidelines when the judge finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id. See Koon v. United States,* — U.S. —, —, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996); *United States v. Gaskill,* 991 F.2d 82, 85 (3d Cir.1993). In determining whether a circumstance was adequately taken into consideration by the Sentencing Commission, a sentencing judge must "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b); *Koon,* 116 S.Ct. at 2044.

■ The Guidelines provide assistance to a sentencing judge in determining whether to depart from the Guidelines by listing certain factors as either encouraged or discouraged bases for departure. Encouraged bases for departure include such circumstances as victim provocation, where downward departure is encouraged, and disruption of a governmental function, where upward departure is encouraged. *See* Guidelines §§ 5K2.10, 5K2.7; *Koon,* — U.S. at —, 116 S.Ct. at 2045.

The Guidelines also include a number of discouraged bases for departure which are "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Koon,* — U.S. at —, 116 S.Ct. at 2045 (citing Guidelines ch. 5, pt. H, intro. comment). Examples of discouraged factors include a defendant's education and vocational skills, *see* § 5H1.2; mental and emotional conditions, *see* § 5H1.3; employment record, *see* § 5H1.5; and family and community ties and responsibilities. *See* § 5H1.6. While the Guidelines do not provide that a sentencing judge may never depart based upon a discouraged factor, the Guidelines do state that such factors

"should be relied upon only 'in exceptional cases.'" *Koon,* — U.S. at —, 116 S.Ct. at 2045 (citing Guidelines ch. 5, pt. H, intro. comment).

■ Defendant contends that downward departure is warranted in this case essentially based upon two categories of factors: (a) mental and emotional conditions; and (b) family and community ties and responsibilities. As set forth above, the Guidelines discourage the use of either of these factors as a basis for departure, stating that they are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." *See* § 5H1.3 (mental and emotional conditions); § 5H1.6 (family and community ties and responsibilities). Accordingly, this Court may depart from the applicable Guideline range "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* — U.S. at —, 116 S.Ct. at 2045.

### A. *Mental and Emotional Conditions*

Defendant asserts that a downward departure is appropriate because his "extraordinary" mental and emotional condition makes him an atypical defendant in several ways. First, the Defendant contends that he suffers from an "extraordinary" mental and emotional condition brought about by the stress he sustained resulting from several traumatic events in his life. Next, the Defendant alleges that his mental and emotional condition is exceptional because he has committed no physical or sexual abuse of children. Third, the Defendant contends that his offense was a result of aberrant behavior. Finally, he maintains that his rehabilitative efforts render his mental and emotional condition extraordinary.

### (1) Traumatic Life Events

■ Defendant contends that he suffers from an "extraordinary" mental and emotional condition brought about by the stress he sustained resulting from several traumatic events in his life including the death of his father, the death of his father-in-law, the

illnesses of his wife and daughter, and the incarceration of his son. Defendant argues that as a result of these traumatic events, he now suffers from a depressive disorder, paraphilia and obsessive compulsive disorder, all of which had previously lain dormant. While the circumstances precipitating the Defendant's mental and emotional state may be unfortunate, I do not find that they are so "extraordinary" in nature or degree as to warrant a downward departure from the Guidelines in this case.

The cases cited by the Defendant where a downward departure was permitted based upon the "extraordinary" mental and emotional condition of a defendant are clearly distinguishable. For example, in *United States v. Lara*, 905 F.2d 599, 603 (2d Cir. 1990), the Second Circuit affirmed the district court's downward departure from the Guidelines based upon the "extreme vulnerability" of the defendant to victimization in prison due to his "immature appearance" and "bisexual orientation." *Id.* In so holding, the Second Circuit concluded that "[e]xtreme vulnerability of criminal defendants is a factor that was not adequately considered by the Commission and a proper ground for departure under § 3553(b)." *Id.* at 605. No such "extreme vulnerability" is present, or even alleged in Mr. Artim's case.

Defendant also cites *United States v. Clark*, 8 F.3d 839 (D.C.Cir.1993), *United States v. Roe*, 976 F.2d 1216 (9th Cir.1992), and *United States v. Vela*, 927 F.2d 197 (5th Cir.), *cert. denied*, 502 U.S. 875, 112 S.Ct. 214, 116 L.Ed.2d 172 (1991), in support of his contention that downward departure is warranted due to his "extraordinary" mental and emotional condition. All three of these cases involved the physical and/or sexual abuse of the defendant as a child.

In *Clark*, the Court of Appeals for the District of Columbia held that a defendant's childhood exposure to domestic violence may be a proper ground for downward departure and remanded to the district court for additional factual findings. *Clark*, 8 F.3d at 846.

Similarly, in *Roe*, the Ninth Circuit held that the exceptional nature of the defendant's history of physical and sexual abuse as a child may have warranted a downward departure and remanded for further proceedings in that regard. In so holding, the *Roe* court noted that the defendant's mother's boyfriend "savagely beat Roe, sometimes as often as once a day, with belts, extension cords, and coat hangers. He also routinely raped and sodomized her. When Roe resisted, she was stripped naked and beaten into submission ... This abuse continued for several years until, at the age of twelve, Roe ran away from home." *Roe*, 976 F.2d at 1218.

Even extreme childhood abuse will not always warrant a downward departure. In *Vela*, although the defendant had produced evidence that her stepfather had sexually abused her as a child, the Fifth Circuit affirmed the district court's refusal to depart downward, stating that such abuse was not extraordinary because "[c]hildhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition." *Vela*, 927 F.2d at 199.

The events of Mr. Artim's life which he claims have precipitated his mental and emotional condition not only do not approach the nature or the magnitude of those found to be "extraordinary" in *Roe*, but also do not even approximate those found insufficient to warrant downward departure by the court in *Vela*.

Defendant also relies on *United States v. Garza–Juarez*, 992 F.2d 896 (9th Cir.1993), *cert. denied*, 510 U.S. 1058, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994), in seeking a downward departure based upon his mental and emotional condition. In that case, the Ninth Circuit held that the district court did not abuse its discretion in its downward departure based upon the defendant's "panic disorder and agoraphobia." *Id.* at 913. The district court found that the defendant had suffered for the past twenty years from conditions which completely debilitated him at times. In downwardly departing from the Guidelines, the district court concluded that "[t]he defendant suffers from a medical condition, panic disorder with agoraphobia, which is a mitigating factor of a kind not adequately taken into consideration by the sentencing commission in formulating its

guidelines." *Id.* at 913. The condition from which Mr. Artim alleges to suffer does not approach in severity or magnitude that of the defendant in *Garza–Juarez.*

Based on the foregoing, I find that neither the mental and emotional condition from which the Defendant alleges to suffer, nor the stress factors which the Defendant contends to have precipitated his mental and emotional condition, are sufficiently "extraordinary" to warrant a downward departure from the applicable Guideline range.

#### (2) Aberrant Behavior

■ Defendant further argues that he is entitled to a downward departure based upon his mental and emotional condition because his criminal offense was "aberrant." Defendant recognizes, however, that "his case might well fail the test for this departure set forth [by the Third Circuit] in *United States v. Marcello,* 13 F.3d 752, 761 (3d Cir.1994), which requires that aberrant behavior 'involve a lack of planning; it must be a single act that is spontaneous and thoughtless.' " (Defendant's Memorandum at 7 n. 3) (citing *Marcello* ).

In *Marcello,* the defendant was convicted of structuring bank deposits in such a way as to evade various federal reporting requirements. In committing the offense, the defendant had deposited $9000 each day over a one week period of time. In finding that the defendant did not qualify for downward departure based upon "aberrant behavior," the court found that some degree of pre-planning was required in order for the defendant to make the seven deposits during the course of the offense. *Id.* at 761.

Similarly, Mr. Artim's receipt of child pornography by mail was equally pre-planned. In order to commit his offense, the evidence reflects that he first corresponded with the undercover agent, then sent cash to the undercover agent, secured a post office box in which to receive materials, and ultimately retrieved the materials from the post office box. Mr. Artim's actions in planning his commission of the offense preclude this Court from finding that his commission of the offense was "aberrational." Accordingly, I find that the Defendant does not qualify for

downward departure based upon "aberrant behavior."

#### (3) No Physical or Sexual Abuse

■ Defendant further argues that a downward departure is warranted because he never actually sexually abused children, thereby making his case different from the ordinary receipt of child pornography case. This precise contention was rejected in *United States v. Barton,* 76 F.3d 499 (2d Cir. 1996), and *United States v. Studley,* 907 F.2d 254, 258 (1st Cir.1990).

In those cases, the courts were "unwilling to make a broad generalization that those convicted of receiving child pornography also ordinarily abuse children." *Studley,* 907 F.2d at 258. In refusing to depart downwardly from the Guidelines where the defendant had been convicted of receiving child pornography, but had not engaged in the actual sexual abuse of children, both courts noted that a defendant is not entitled to a downward departure merely because he did not commit another crime. Moreover, the courts noted that the Guidelines permit a sentencing judge to depart *upwardly* from the Guidelines if a defendant had been convicted of receiving child pornography *and* had sexually abused or exploited a child. *Id.* (citing § 2G2.2(b)(4)). I find the reasoning of *Barton* and *Studley* persuasive, and therefore conclude that Mr. Artim is not entitled to a downward departure in guideline range merely because he has not physically or sexually abused a child.

#### (4) Rehabilitative Efforts

Defendant further contends that he is entitled to a downward departure based upon his rehabilitative efforts in the past few months. Defendant asserts that his attendance at individual and group sex offenders' therapy over the past five months demonstrates an acceptance of responsibility greater than that ordinarily present.

■ Defendant's offense level of 13 already represents a two-level downward adjustment for acceptance of responsibility pursuant to § 3E.1.1, to which the Government has stipulated in the plea agreement. Any

further downward departure for acceptance of responsibility requires a defendant to "demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present." *United States v. Lieberman,* 971 F.2d 989, 996 (3d Cir.1992).

The Third Circuit, however, has held that a defendant's post-arrest rehabilitative efforts, although commendable, do not demonstrate such an acceptance of responsibility that is substantially greater than that ordinarily present. *United States v. Pharr,* 916 F.2d 129, 131 (3d Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). In so holding, the court noted that "[i]n authorizing the Federal Sentencing Guidelines, Congress shifted toward a system of penology that imposes fair punishment away from a system that attempts to rehabilitate the individual." *Id.* at 132.

Although Mr. Artim's post-arrest attempt at self-rehabilitation through therapy is commendable, I do not find that this effort demonstrates an acceptance of responsibility warranting a downward departure from the Guideline range beyond the two-level reduction prescribed in § 3E1.1.

### B. *Family and Community Ties and Responsibilities*

Defendant also seeks a downward departure based upon his family and community ties and responsibilities. Although the Guidelines provide that "[f]amily ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the applicable range," *see* Guidelines § 5H1.6, such factors may be considered in an extraordinary case.

Defendant contends that his case is one in which his family and community will suffer in a truly extraordinary manner should he be incarcerated. Defendant asserts that, not only does he provide financial support for his family, he also provides emotional support for them as well. He maintains that were he to be incarcerated, his son's recovery from drug problems and reintegration into the community after incarceration would be interrupted, his daughter's college education would likely end or be interrupted, his elderly mother and mother-in-

law would be deprived of his financial and emotional support and daily assistance, and his young grandson would be deprived of his affections. Defendant also asserts that his already faltering business would collapse were he to be incarcerated.

Although the Court recognizes that Mr. Artim's family and his employees would surely suffer as a result of his incarceration, "many defendants shoulder responsibilities to their families, their employers, and their communities. Disruptions of the defendant's life and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Gaskill,* 991 F.2d 82, 85 (3d Cir. 1993) (citing *United States v. Johnson,* 964 F.2d 124, 127 (2d Cir.1992)). As noted by the Third Circuit, "[d]isintegration of family life in most cases in not enough to warrant departures." *Id.*

The circumstances surrounding Mr. Artim's family and community are in sharp contrast to the circumstances in those cases cited by the Defendant where a downward departure was granted based upon family and community ties and responsibilities. For example, in *Gaskill,* the court found that the defendant's family ties were so exceptional as to warrant a downward departure from the Guidelines. In that case, the evidence reflected that the defendant's wife suffered from a serious mental illness, manifested by reduced verbal communication and vocabulary, bouts of depression, attempted suicide, and erratic and compulsive behavior. She spent over sixteen hours a day in bed and relied solely upon the defendant to administer her medication which was necessary to control flare-ups of her condition. *Id.* at 84. Based upon the evidence presented to this Court, the Artim family's reliance upon the Defendant does not approximate that of the defendant's wife in *Gaskill.*

Defendant also cites *United States v. Monaco,* 23 F.3d 793, 801 (3d Cir.1994), in support of a downward departure based upon family ties. In that case, the defendant was indicted along with his son for their involvement in a fraudulent billing scheme. The defendant pled guilty to conspiracy. The district court granted a downward departure

based, in part, on the "mental anguish [the defendant] felt at seeing his son, otherwise a law-abiding citizen with an excellent future, convicted of a crime because of his father's fraudulent scheme." *Id.* The Third Circuit affirmed, finding that a departure on this basis was proper "in the unusual facts and circumstances of this extraordinary case." *Id.* at 801. The circumstances warranting downward departure in *Monaco,* therefore, did not relate to the effect of a defendant's incarceration on his family and community, but instead focused on the defendant's own anguish in involving his son in his own criminality.

Mr. Artim's family ties and responsibilities are not so great as in cases where a defendant is a single parent who is the sole caretaker for young children. Even in such cases, however, courts have repeatedly found those circumstances not to be extraordinary. *See United States v. Headley,* 923 F.2d 1079, 1083 (3d Cir.1991) ("every court to consider the issue of departure based on the effect that sentencing a single parent to prison will have on minor children has found the circumstances not to be extraordinary"); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir. 1990) ("[defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts ... parental relationships").

In this case, although the Defendant's family life will surely be disrupted by a period of incarceration, I conclude that a downward departure based upon Mr. Artim's family ties and relationships is not warranted as his family ties and relationships are not of such a nature or magnitude as to render them "exceptional."

Nor do I find that a downward departure is warranted because of the effect a period of incarceration will have on the Defendant's faltering business. In *United States v. Sharapan,* 13 F.3d 781 (3d Cir. 1994), the Third Circuit held that the district court erred in granting a downward departure based upon its determination that the defendant's incarceration would cause the defendant's business to fail. In so holding, the court stated that there was nothing extraordinary in the fact that the defendant's incarceration might "cause harm to the business and its employees," and that, even if the business would fail as a result of the incarceration, there was "no basis for concluding that this failure would cause any extraordinary harm to society as a whole." *Id.* at 785. *See also United States v. Reilly,* 33 F.3d 1396 (3d Cir.1994) ("we see nothing extraordinary in the fact that [the Defendant's] conviction may harm not only his business interests but also those of his family members"). Accordingly, I find that the potential harm to Mr. Artim's business caused by his incarceration does not warrant a downward departure from the Guidelines.

### C. Totality of Factors

Finally, Defendant argues that, even if no one factor is sufficient to warrant departure, these factors, when viewed in combination with one another, justify a downward departure. The Commentary to § 5K2.0 of the Guidelines provides that:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

I find that the various factors on which the Defendant relies to support his motion for downward departure, when viewed alone, or in combination with one another, are insufficient to render this case one of those rare, exceptional cases where departure is warranted. Accordingly, Defendant's motion for downward departure will be denied.