UNITED STATES of America

v.

Cory Stephen LAKE.

No. CRIM. 97–693.

United States District Court,
D. New Jersey.

June 23, 1999.

Faith S. Hochberg, United States Attorney, Diana Vondra Carrig, Assistant United States Attorney, Camden, NJ, for United States of America.

Robert A. Warmington, James H. Maynard & Associates, P.C., Morristown, NJ, for Defendant, Cory Stephen Lake.

## OPINION

ORLOFSKY, District Judge.

Defendant, Cory Stephen Lake ("Lake"), has pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), based on the seizure of 350 computer disks containing images depicting children engaged in sexual activities. The Government has moved for several upward departures, seeking an increase both in Lake's criminal history category, as well as his base offense level. In addition, the Government has requested that the Court sentence Lake at the upper end of the appropriate Sentencing Guideline Range because of the sadistic and violent nature of the images. Lake opposes the Government's motions and has filed his own motions, seeking a downward departure based upon what he contends constitutes "minimal" or "minor participation," and to account for four characteristics of his offense that he alleges take this case "outside the heartland" of cases covered by the Sentencing Guidelines. *See Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

The motions filed by the parties require this Court to navigate the perilous sea of the Sentencing Guidelines, a voyage which is made even more difficult in this case given the emotionally charged nature of the offense to which Lake has pled guilty. For the reasons set forth below, I find that there is no reliable evidence in the record demonstrating: (1) that Lake's criminal history category under-represents his past criminal conduct or the likelihood of his future criminal conduct; (2) that Lake has a cognitive or volitional dysfunction sufficient to warrant a finding of diminished capacity; and, (3) that Lake is susceptible to treatment or likely to suffer from abuse in prison to a degree that distinguishes his case from the heartland of other cases. By contrast, I find, by a preponderance of the evidence,[1] that the sheer volume of child pornography that Lake possessed removes his case from the "heartland," justifying an upward departure in his total offense level of two-levels. Finally, I hold that Lake's motion for a downward departure based upon his allegedly "minimal" or "minor participation" in the offense is unavailable in a case, such as this, where the defendant has only been charged with possession of child pornography. Accordingly, I will deny all of Lake's motions for a downward departure. I will grant the Government's motion for an upward departure based upon the volume of child pornography Lake possessed, however, I will deny the Government's motions in all other respects.

As a result of my disposition of the motions filed by the Government and Lake, I find that Lake's total offense level is 20 and his criminal history category is I, which produces a Sentencing Guideline Range of 33–41 months.

## I. FACTUAL BACKGROUND

On May 12, 1997, the Montclair, New Jersey, Police Department ("Montclair Po-

---

1. *See United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989) (holding "that a sentencing court considering an adjustment of the offense level ... need only base its determination on the preponderance of the evidence with which it is presented").

lice") arrested Lake in the driveway of his apartment, as he was exiting from his car. *See* Letter from Robert A. Warmington, Esq., to the Honorable Stephen M. Orlofsky ("Lake's Opposition"), dated April 29, 1999, Ex. C ("Statement of Facts" at 5–11); Presentence Investigation Report ("PSR"), dated Jan. 12, 1999, at 4.[2] As he had on other days in the past, Lake had been babysitting for an eleven-year old boy, however, on May 12, 1997, the boy[3] had accused Lake of sexual assault. The boy had:

> made statements to the effect that Mr. Lake had touched his "private parts" on several occasions. On the day of the arrest Mr. Lake was allegedly physically aggressing on [the boy], chasing him around the house and touching his penis. Mr. Lake was supposedly straddling [the boy] and restraining him while touching him at one point. [The boy] broke away and took refuge in a bedroom, using a vacuum cleaner attachment to protect himself. [The boy] stated that Mr. Lake threatened to kill him if he told anyone.

Letter from Diana Vondra Carrig, Esq., Assistant United States Attorney, to the Honorable Stephen M. Orlofsky ("Government's Motion"), dated Apr. 15, 1999, Ex. C ("Forensic Assessment" of David J. Tutone, M.A., Certified Clinical Criminal Justice Specialist, dated Sept. 26, 1998).

In response to the boy's allegations, the Montclair Police came to arrest Lake. During a search of Lake's car, the Montclair Police discovered approximately 350 computer disks containing approximately 2,100 visual depictions of child pornography. As a result, Lake was indicted for one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).[4] In addition, Lake was indicted by the State of New Jersey for: (1) four counts of second degree sexual assault;[5] (2) two counts of second degree child endangerment; (3) one count of second degree distribution of child pornography; (4) one count of fourth degree possession of child pornography; (5) one count of tampering with evidence; (6) one count of criminal restraint; and (7) one count of terroristic threats. *See* Government's Motion, Ex. A (State Indictment, dated Oct. 30, 1997, filed in Superior Court of New Jersey, Law Division, Criminal, Essex County).

In response to the state charges, Lake claims that the boy, who "has been diagnosed with Attention Deficit Hyperactivity Disorder" and has "a history of severe acting out with a recent pre-occupation with sexual matters,"[6] *id.*, Ex. C, had been

---

**2.** The PSR incorrectly states that Lake was arrested on May 13, 1997, not May 12, 1997.

**3.** To preserve and protect the anonymity of Lake's alleged victim, I will refer to him throughout this opinion as "the boy."

**4.** Section 2252(a)(4)(B) punishes any person who:

> knowingly possesses 1 or more books magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if—
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (ii) such visual depiction is of such conduct.

**5.** After the boy alleged that Lake had sexually assaulted him, another male child of approximately the same age made similar allegations. Two of the counts for sexual assault contained in the state indictment result from the allegations of this second child. Because the record contains almost no details of the allegations asserted by the second boy, I have not included them in summarizing the factual background.

**6.** Lake claims that he began babysitting "due to financial pressures" and that "[h]e recalled seeing an advertisement in the newspaper to care for an 'eight to ten year old boy with mild special needs.'" Lake's Opposition, Ex. B (Report of Timothy P. Foley, Ph.D.). In Lake's "Statement of Facts," Lake reports that at the age of three, the boy was classified by a nursery school therapist as a "difficult child." *Id.*, Ex. C ("Statement of Facts," at 3). Further, Lake alleges that in March 1997, the boy destroyed his bedroom, which "neces-

experiencing a fit of rage and it became necessary for Lake to restrain the child in order to control him. Lake maintains that he did not sexually assault the boy. Further, he claims that, because he is innocent of sexual assault, he will only plead guilty to child endangerment, and not sexual assault. The plea agreement proposed by the State of New Jersey contemplates that Lake will plead guilty to two counts of third degree child endangerment and one count of fourth degree possession of child pornography. *See* Government's Motion, Ex. B ("Essex County Prosecutor's Office Request to Recommend Disposition").

In the aftermath of Lake's arrest, Special Agents of the FBI interviewed over ten former campers (or their parents) and counselors who attended and worked at Echo Lake Summer Camp while Lake was a counselor there. *See* Lake's Opposition, Ex. A (various interview reports). None of these persons ever reported experiencing or witnessing Lake touch any child in an inappropriate manner. *See id.* Lake alleges that his "long history of jobs that gave him access to children, without reported incident, supports the finding that he does not present a serious risk" to the community. Lake's Opposition at 17.

## II. DISCUSSION

### A. The Government's Motions for Upward Departures

The Government seeks an upward departure on three separate grounds. First, the Government contends that the Court should grant a upward departure in Lake's criminal history category, pursuant to Sentencing Guideline 4A1.3, "because Lake's criminal history category does not adequately reflect his past criminal conduct." Government's Motion at 3. Second, the Government requests that the Court grant

an upward departure "because Lake's criminal history category does not adequately reflect . . . his predilection to commit additional future crimes." *Id.* at 5. Third, the Government seeks an upward departure based on the "sheer volume" of materials that Lake possessed, arguing that the number of images that Lake possessed brings his case "outside the heartland" of other cases involving the possession of child pornography. *Id.* at 7–8. I will address each of these issues *seriatim.*

### 1. "Pending" State Charges

■ In addition to the pending federal charge for possession of child pornography, for which Lake is to be sentenced by this Court, Lake has also been charged by the State of New Jersey with crimes arising out of his possession of child pornography and his alleged sexual assault of the boy for whom he babysat. Section 4A1.3 of the Sentencing Guidelines provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentencing departing from the otherwise applicable range. Such information may include, but is not limited to, information concerning: . . .
>
> (d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;
>
> (e) prior similar adult criminal conduct not resulting in a criminal conviction.

The Third Circuit has explained that:

> The task before the sentencing court in these circumstances is to identify the category which encompasses those defendants whose criminal histories "most closely resemble[ ]" the defendant's own. *See* [Sentencing Guideline] § 4A1.3.

---

sitated calling the police to calm him down." *Id.* Finally, Lakes alleges that:

> In April 1997, [the boy] told his mother he was going to kill himself by drinking bleach. He also said there was a bomb in the backyard that was going to blow up, but

later indicated he meant a bomb within himself. He was taken to Hackensack Medical Center where he was evaluated and released.

*Id.* (Statement of Facts at 4).

Where the defendant has confessed to the commission of serious crimes for which he has not been convicted, it would certainly seem ... reasonable for a sentencing court to consider what the defendant's criminal history category would be if he had been convicted of those crimes.

*United States v. Harris,* 44 F.3d 1206, 1213 (3d Cir.), *cert. denied,* 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 731 (1995). Where the sentencing court determines that an upward departure under § 4A1.3 is warranted, that departure "must be calculated by stepping up the criminal history category, not by increasing the base offense level." *United States v. Harvey,* 2 F.3d 1318, 1325 (3d Cir.1993) (citing *United States v. Hickman,* 991 F.2d 1110, 1114 (3d Cir.1993) (when applying § 4A1.3 "the court is obliged to proceed sequentially through [t]he criminal history categories")). In other words, the court "may not move to the next higher category until it has found that a prior category still fails to adequately reflect the seriousness of the defendant's past criminal conduct." *Hickman,* 991 F.2d at 1114.

▇▇▇ Moreover, the Court may not "ratchet up" a defendant's criminal history category unless there is " 'reliable information' in support of a judge's decision that the applicable criminal history category is underrepresentative." *United States v. Short,* 4 F.3d 475, 480 (7th Cir.1993); *see also United States v. Brewster,* 127 F.3d 22, 27–28 (1st Cir.1997) (holding that "information upon which a sentencing determination is based must possess 'sufficient indicia of reliability to support its probable accuracy.' ") (quoting U.S. Sentencing Guidelines Manual § 6A1.3), *cert. denied,* —— U.S. ——, 118 S.Ct. 1543, 140 L.Ed.2d 691 (1998). "Reliability is a flexible, case-specific standard in the sentencing context, but it always is informed by considerations of due process and experiential knowledge." *Id.* at 28. At a minimum, a defendant's confession or "an independent investigation of the pending state charges" by "either the prosecutor or the presentence report author" constitute "reliable evidence." *Short,* 4 F.3d at 480; *see Harris,* 44 F.3d at 1213. "[A]n arrest record standing alone[, however,] is not sufficiently reliable to support a departure." *United States v. Williams,* 989 F.2d 1137, 1142 (11th Cir.1993).

In this case, subsection (d), which instructs the Court to consider "whether the defendant was pending trial or sentencing on another charge at the time of the instant offense," is not applicable, since the state charges were not "pending" at the time that Lake committed the federal offense. *See* U.S. Sentencing Guidelines Manual § 4A1.3(d); *cf. United States v. Touby,* 909 F.2d 759, 773–73 (3d Cir.1990) (holding that, in sentencing a defendant for an offense committed in January, 1989, the district court properly granted an upward departure in consideration of a state indictment, filed January 18, 1988, even if the defendant planned to withdraw his guilty plea on the state charges).

With respect to subsection (e), which directs the Court to consider "prior similar adult criminal conduct," the Government contends that the state charges against Lake reveal that Lake's adult criminal history category does not reflect the full extent of Lake's past criminal conduct. In response, Lake has challenged the reliability of the allegations underlying the state charges. Lake has submitted a lengthy factual background, providing his version of the underlying facts giving rise to the state charges, in which he claims that he merely attempted to subdue a child having a violent temper tantrum. *See* Lake's Opposition, Ex. C. Further, Lake contends that:

the State's proofs regarding the alleged sexual assaults are not strong. The alleged victim of the alleged sexual assault which led to Lake's arrest on May 12, 1997 has a long history of serious psychological problems; the circumstances of the alleged assault (touching the alleged victim on the outside of his pants)

are not incriminating (Lake was babysitting and called the alleged victim's mother to come home early because the boy was acting up) and there is no corroboration.

*Id.* at 18–19. Lake contends that he will not plead guilty to any state charge that alleges that he sexually assaulted a child; rather, he plans, at most, to plead guilty only to the charges of endangering the welfare of a child, a third degree offense,[7] and possession of child pornography, a fourth degree offense.[8] Lake's Opposition at 14. In sum, Lake argues "that under the totality of the circumstances involving the state charges, the information regarding [these charges] is insufficiently reliable to support an upward departure in [his] criminal history category." *Id.* at 19.

■ The record does not contain evidence generally considered to be "reliable," such as Lake's confession or an independent investigation by the Government or the probation officer who prepared the presentence report. *See United States v. Short,* 4 F.3d 475, 480 (7th Cir.1993) (holding that "reliable" evidence includes "an independent investigation of the pending state charges" by "either the prosecutor or the presentence report author"); *United States v. Harris,* 44 F.3d 1206, 1213 (3d Cir.) (holding that a confession is "reliable" evidence), *cert. denied,* 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 731 (1995). Lake challenges the veracity of the allegations underlying the pending state charges, and he has not even conceded that he will plead guilty to any of these charges. *see id.* at 14 ("The final plea agreement, if in fact a plea is entered, could differ in significant detail."); *cf. United States v. Torres,* 977 F.2d 321, 330 (7th Cir. 1992) (holding that a district court may find evidence to be reliable "[w]hen a defendant has an opportunity to and fails to object to the facts, information, and records used to support a departure"). Moreover, "an arrest record standing alone is not sufficiently reliable to support a departure." *United States v. Williams,* 989 F.2d 1137, 1142 (11th Cir. 1993). Thus, in this case, "the record [is] totally devoid of any indication that [Lake] ha[s] committed the crimes" charged in the state indictment. *See United States v. Klund,* 37 F.3d 1249, 1252 (7th Cir.1994). As a result, I cannot find that there is "reliable" evidence that Lake committed any of the crimes charged in the pending New Jersey State indictment. Accordingly, I will

---

7. Section 2C:24–4.a of the New Jersey Statutes provides:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child ... is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

Section 2C:43–6.a defines an offense of the third degree and one of the fourth degree:

> Except as otherwise provided, a person who has been convicted of a crime may be sentenced to imprisonment, as follows:
> (1) In the case of a crime of the first degree, for a specific term of years which shall be fixed by the court and shall be between 10 years and 20 years;
> (2) In the case of a crime of the second degree, for a specific term of years which shall be fixed by the court and shall be between five years and 10 years;
> (3) In the case of a crime of the third degree, for a specific term of years which shall be fixed by the court and shall be between three years and five years;
> (4) In the case of a crime of the fourth degree, for a specific term which shall be fixed by the court and shall not exceed 18 months.

8. Section 2C:24–4.b(4)(b) of the New Jersey Statutes provides:

> Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.

deny the Government's request for a upward departure based on the pending state charges.

## 2. Recidivism and Predilection

As a second basis for an upward departure in Lake's criminal history category, the Government argues that "Lake's criminal history category significantly underrepresents the likelihood that he will commit future crimes." Government's Motion at 6. The Government contends:

[t]hat Lake's conduct has gone far beyond the mere possession of child pornography is beyond dispute. Lake has consistently sought and obtained jobs that give him access to children. Specifically, Lake spent his summers during college working as a camp counselor for Echo Lake Camps.

*Id.* In response, Lake argues that his past work with children, without incident, suggests that he has no such predilections.

As proof of Lake's predilections, the Government submitted the "forensic assessment" of David J. Tutone, M.A., Certified Clinical Criminal Justice Specialist. *See* Government's Motion, Ex. C. Based on an interview of Lake conducted on September 26, 1998, Tutone concluded:

Regarding the offense there is evidence suggesting a pattern of repetitive and compulsive pedophilic sexual behaviors. Mr. Lake is not consciously intending to harm anyone, he is simply not affected by, or cognizant of the dangerous impact of his behavior on others.

Regardless of the disposition of this case, it is recommended that Mr. Lake enter into long term sex offender specific treatment for an indefinite period. Since Mr. Lake has never been in treatment before, and the fact that he is compliant and without other antisocial characteristics, it appears feasible to be optimistic regarding the treatment's effectiveness. Given the nature of Mr. Lake's current charges and his severely depressed mental state, if he is incarcerated for any length of time he may need a degree of protection from other inmates and/or himself.

*Id.* (Tutone Report at 5). Lake has presented another expert report from Timothy P. Foley, Ph.D., Director of Clinical & Forensic Services at the Joseph J. Peters Institute, who interviewed Lake on December 11, 1998, and reviewed numerous documents related to this case, including police reports and both the federal and state indictments. Foley determined that:

Mr. Lake falls into the moderate category of sexual offense recidivism. His age and absence of known perpetration history do not contribute to the probability that he will recidivate.... Mr. Lake's history of entertaining deviant fantasies related to children and child oriented pursuits contribute to the risk that he will offend in the future. There are no indications of drug or alcohol problems, difficulties with anger management, criminal justice history, or other indications of an anti-social personality. The[ ] absence of these factors mitigates the likelihood that he will sexually offend in the future.

It should be noted that the best predictor that sexually offending behaviors will not occur in the future is completion of a sex offender treatment program. Although Mr. Lake is currently involved in psychotherapy, he has not entered a program dedicated to the treatment of sex offending behaviors.

Lake's Opposition, Ex. A (Foley Report at 11–12). Foley recommends that "Lake should be considered at moderate risk to sexually offend against children. He should have no contact with children without a supervising adult who is fully aware of his history." *Id.* (Foley Report at 13). Thus, both of the expert reports conclude that Lake has a "moderate" likelihood of committing similar crimes as the one charged here.

██ In light of the absence of evidence of past criminal conduct, however, I find that I cannot predict that there is a signif-

icant likelihood that Lake will commit similar crimes in the future. More importantly, I have difficulty increasing Lake's criminal history category, and, as a result, his sentence, based on mere predictions of future conduct. The criminal justice system punishes crimes that have been committed or attempted, not those that might only possibly occur in the future. Accordingly, I will deny the Government's motion for an upward departure based upon Lake's possible recidivism rate or predilection to commit similar crimes in the future.

■ I will consider Lake's "moderate" risk for recidivism, however, in determining the length of the period of supervised release I will impose. To maximize the period of treatment and supervision that Lake must undergo, I will impose a three-year period of supervised release, which is the greatest time period permitted by the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 5D1.2(a)(2). Further, during this period of supervised release, I will require Lake to obtain appropriate sex offender treatment, and I will prohibit him from engaging in any employment or volunteer activities in which he would have access to minor children.

### 3. The Volume of Images of Child Pornography

The Government contends that, pursuant to Sentencing Guideline § 5K2.0, the Court should grant an upward departure in Lake's total offense level to account for the "sheer volume of Lake's child pornography collection." Government's Motion at 7. Specifically, the Government contends that:

> The size of Lake's child pornography collection is important for sentencing because it directly contributes to the criminal conduct of others in creating and distributing such offensive materials. Where, as here, a person had such an extensive collection of child pornography, the Court can and should consider the impact upon the victims of this crime.

*Id.* at 8. In his opposition to this motion, Lake argues that the Government should be prohibited from engaging in a "back-door, end-run," by attempting to "transform a simple possession charge into offenses the Guidelines deem far more serious." Lake's Opposition at 24 (citing *United States v. Thomas*, 961 F.2d 1110, 1121 (3d Cir.1992) ("Fairness dictates that the government not be allowed to bring the firearm possession crime through the 'back door' in the sentencing phase, when it had previously chosen not to bring it through the 'front door' in the charging phase.")).[9] In other words, Lake argues that the Government chose to charge him with only one count of possession of child pornography and, therefore, it should not be permitted to circumvent the grand jury process by increasing his sentence through the "back door." Additionally, Lake contends that he did not possess an atypical number of images, because in "[t]he reality of our contemporary computer age[,] ... vast amounts of information and images are rapidly downloaded onto computer disks." Lake's Opposition at 25.

> Section 52K.0 provides:
>
> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
> ... The decision as to whether and to

---

9. The Third Circuit's holding in *Thomas* was overruled by, or, at least, severely limited by the Third Circuit's subsequent holding in *United States v. Baird*, 109 F.3d 856, 866 (3d Cir.1997). *See id.* ("To the extent that *Thom*-*as* is inconsistent with [*United States v.]Watts* [, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)], *Thomas* will of course be deemed without effect.").

what extent departure is warranted rests with the sentencing court on a case-specific basis.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range ..., if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines in inadequate or excessive.

U.S. Sentencing Guidelines Manual § 5K2.0. Furthermore, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.,* § 5k2.0 commentary (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). "To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id.* (quoting *Koon,* 518 U.S. at 98, 116 S.Ct. 2035). Thus, in order to depart under § 5K2.0 the sentencing court must find that the relevant "characteristic or circumstance is present to an unusual degree[, so as to] distinguish[ ] the case from the 'heartland' cases covered by the guidelines." § 5K2.0.

In applying § 5K2.0, I must determine whether: (1) the Sentencing Guidelines account for possession of a large volume of child pornography; and (2) possession of 350 computer disks, containing 2,100 images of child pornography is a volume of pornography "unusual enough for it to fall outside the heartland of cases." *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035.

■ The Sentencing Guidelines clearly contemplate that the sentencing court should consider the number of images of child pornography possessed by a defendant. Section 2G2.4(b)(2) provides: "If the offense involved possessing ten or more books, magazines, periodicals, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor, increase by 2 levels." The failure of the Sentencing Guidelines to mention "computer disk" or "computerized image," however, suggests that the Sentencing Commission did not contemplate the possibility of possessing a collection of child pornography as large as the one possessed by Lake in this case. Furthermore, the Sentencing Guidelines provide for a two-level increase for the possession of "ten or more" items, indicating the Sentencing Commission did not envision a collection as extensive as that possessed by Lake. Thus, I find that, while the Sentencing Guidelines require that I consider the number of items of child pornography possessed by a defendant, they do not contemplate a collection as large as the one at issue here. *See United States v. MacLeod,* 80 F.3d 860, 866 (3d Cir.1996) ("When close to half of a defendant's crimes may go unpunished, we consider this significant and worthy of departure.").

In addition, I find that Lake's collection of approximately 2,100 images of children engaged in sexually explicit conduct is unusually large. *Compare United States v. Fellows,* 157 F.3d 1197, 1202 (9th Cir.1998) (defendant possess twenty computer graphics files with visual depictions of child pornography); *United States v. Hall,* 142 F.3d 988 (7th Cir.1998) (defendant possessed three computer disks with various files of child pornography); *United States v. Wind,* 128 F.3d 1276 (8th Cir.1997) (defendant possessed fifteen computer files containing child pornography). The amount of time that it must have taken Lake to amass 350 computer disks filled with images of child pornography is astounding. Furthermore, the reference in the Guidelines to "ten or more" items suggests that the typical case contemplated by

the Guidelines involves a significantly smaller collection of child pornography. Thus, I am compelled to conclude that Lake's collection is sufficiently large "for it to fall outside the heartland of cases." *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035. Accordingly, I will grant the Government's motion for an upward departure based on the sheer volume of child pornography that Lake possessed.

■ "Having determined that an upward departure is appropriate, the Court must tackle the more difficult task of figuring the amount of the departure." *United States v. Lisk,* 939 F.Supp. 332, 336 (D.N.J.1996) (Politan, J.). "Almost by definition, there cannot be rules for computing the amount of departure—for if it were possible to do this, the factors could be included in the guidelines, avoiding 'departures' altogether." *United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990). "But it is possible to formulate approaches that link the extent of departure to the structure of the guidelines." *Id.* As a result, "the power to depart is not the power to 'throw away the guidelines,' in favor of any sentence that strikes the judge as reasonable." *United States v. Kikumura,* 918 F.2d 1084, 1112 (3d Cir.1990) (quoting *Ferra,* 900 F.2d at 1061–62). Thus, "in determining the amount of an upward departure pursuant to ... § 5K2.0, the Court is guided by a reasonableness standard." *Lisk,* 939 F.Supp. at 336 (citing *Kikumura,* 918 F.2d at 1110). Furthermore, "there are 'objective standards to guide the determination of reasonableness.' " *United States v. Baird,* 109 F.3d 856, 872 (3d Cir.1997) (quoting *Kikumura,* 918 F.2d at 1110). "Those objective standards can be found in the [Sentencing] Guidelines themselves, which provide analogies to which sentencing courts must look when making their determinations." *Id.; see also Ferra,* 900 F.2d at 1062 (recommending that a sentencing court determine the amount of a departure by analogy to factors that "the Commission considered").

In this case, I find that an upward departure of an additional two levels is reasonable, based on an analogy to § 2G2.4(b)(2) of the Sentencing Guidelines. In § 2G2.4(b)(2), the Sentencing Commission has determined that a two-level increase is appropriate to distinguish those defendants who possess "several" items of child pornography, that is, more than ten, as opposed to those individuals who merely possess a "few" items, or less than ten. *See* U.S. Sentencing Guideline Manual § 2G2.4(b)(2). An additional two-level increase similarly distinguishes those offenders who possess "many" items of child pornography, as is the case here, from those who only possess "several." With this additional two-level increase, Lake's total offense level is 20. With a criminal history category of I, the applicable Sentencing Guideline Range is 33–41 months.

I acknowledge that Lake is correct in suggesting that such an upward departure allows the Government to seek a harsher sentence, without indicting him for a more serious crime, or for several counts of the same crime. The Sentencing Guidelines, however, expressly permit such an outcome. By allowing this Court to consider conduct "outside the heartland" of cases, as well as uncharged conduct, the Sentencing Guidelines enable the Government to seek a harsher penalty despite its decision to indict the defendant for only one violation of a statute, or for a less serious crime. *See Witte v. United States,* 515 U.S. 389, 401–02, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (holding that a sentencing court's consideration of uncharged conduct is constitutional); *United States v. Cianci,* 154 F.3d 106, 111–13 (3d Cir.1998) (holding that, under the Sentencing Guidelines, the sentencing court may consider uncharged conduct); *United States v. Baird,* 109 F.3d 856, 863 (3d Cir.1997) (holding that a sentencing court may consider "conduct underlying dismissed counts"). Thus, although the Government may be using the "back door" to accomplish an "end run" of the grand jury process, I hold that such a tactic is expressly

permitted by the Sentencing Guidelines. Furthermore, the Third Circuit's opinion in *United States v. Thomas,* 961 F.2d 1110 (3d Cir.1992), which held that the Government may not use the "back door" to seek a harsher sentence, has been overruled or, at least, severely limited by the Third Circuit's subsequent opinion in *United States v. Baird,* 109 F.3d 856, 866 (3d Cir.1997) and by *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). *See* note 6 *supra.* Thus, Lake's reliance upon *Thomas* cannot prevent the result reached here.

**B. The Government's Motion for Sentencing at the Upper End of the Range**

The Government requests that the Court impose a sentence at the higher end of the applicable sentencing range because of the sadistic and violent nature of the child pornography that Lake possessed. *See* Government's Motion at 9–10. Without recounting the disturbing descriptions of the images offered by the Government,[10] a portrayal which Lake does not contest, I find that many of the computer images he possessed were indeed sadistic and violent. In addition to these computer disks containing some violent and sadistic images of child pornography, the search incident to Lake's arrest revealed that Lake also possessed "a stained blue towel, numerous pictures of child pornography, photographs of [the boy] (one of the children [whom] Lake is accused of sexually assaulting), children's magazines, children's toys and a flesh-colored child size sexual device (dildo)." PSR ¶ 11.

Nonetheless, in opposition to the Government's request, Lake argues that the "borrowing" of the specific offense characteristic from § 2G2.2, which applies to the production and distribution of child pornography, is "totally inappropriate ... because the Sentencing Commission has clearly differentiated possession cases from other types of cases governed by Section 2G2.2." Lake's Opposition at 27.

■ Without addressing the merits of Lake's contentions, I observe that it is entirely within the Court's discretion to impose a sentence at the upper, middle, or lower, end of the range. *See* U.S. Sentencing Guideline Manual § 5C1.1 ("A Sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the applicable guideline range."). Furthermore, the Sentencing Guidelines instruct that, "[i]n determining the type of sentence to impose, the sentencing judge should consider the nature and seriousness of the conduct, the statutory purposes of sentencing, and the pertinent offender characteristics." *Id.,* introductory commentary to chapter five. Thus, it is within my discretion to consider the sadistic and violent nature of the images that Lake possessed as part of the "nature and seriousness of the conduct." *See id.*

**C. Lake's Motions for Downward Departures**

■ Lake moves for a downward departure on three separate grounds, two of which can be dealt with together. *See* Letter from Robert A. Warmington, Esq., to the Honorable Stephen M. Orlofsky ("Lake's Motion"), dated May 3, 1999. First, Lake argues that he should receive a reduction in his total offense level as a "minimal participant," pursuant to Sentencing Guideline § 3B1.2(a), or as a "minor participant," pursuant to Sentencing Guideline § 3B1.2(b). *See id.* at 1–6. In *United States v. Romualdi,* 101 F.3d 971 (3d Cir.1996), the Third Circuit held that such reductions are not available in a case involving mere possession of child pornography, because the crime "as charged, possession, not receipt, of child pornography, is a crime that on its face requires no

---

**10.** In light of the graphic and disturbing nature of the images, I find it unnecessary to describe the visual depictions of child pornog- raphy contained in Lake's collection in greater detail in this Opinion.

concerted activity." *Id.* at 975. Thus, "[b]ecause the purpose of § 3B1.2 is to permit mitigation of the sentence of a defendant who is a minimal participant in an offense involving concerted activity, ... § 3B1.2 is simply unavailable" in cases charging only possession. *Id.* Thus, I must deny Lake's motion for a downward departure under § 3B1.2(a), as a "minimal participant," or under § 3B1.2(b), as a "minor participant," because such departures are unavailable here.

Lake also contends that four characteristics of his offense take this case "outside the heartland" of Guideline cases, *see Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), namely: (1) he "channeled" his pedophilic desires into mere possession of pornography, and, therefore, chose the "lesser of two evils" and avoided any actual sexual contact with children, *see* Lake's Motion at 7–10; (2) his criminal conduct resulted from a diminished capacity, *see id.* at 10–14; (3) he is unusually susceptible to treatment, *see id.* at 14–15; and (4) he is subject to an unusual potential for abuse in prison. *See id.* at 16–17.

Because I have considered the legal standards applicable to departures pursuant to § 5K2.0 above, I will not repeat them here. Instead, I will proceed directly to address the issues presented by Lake's motion.

### 1. "Channeling"

In *United States v. Artim*, 944 F.Supp. 363 (D.N.J.1996), I considered a motion for a downward departure made by a defendant who "argue[d] that a downward departure [was] warranted because he never actually sexually abused children." *Id.* at 368. In *Artim*, I relied upon *United States v. Barton*, 76 F.3d 499 (2d Cir.1996), and *United States v. Studley*, 907 F.2d 254, 258 (1st Cir.1990), to hold "that a defendant is not entitled to a downward departure merely because he did not commit another crime." *Artim*, 944 F.Supp. at 368. Because Lake makes the same argument in this case, my holding in

*Artim* is applicable here. Accordingly, I will deny Lake's motion for a downward departure "merely because he has not physically or sexually abuse a child." *See id.*

### 2. Diminished Capacity

Pursuant to § 5K2.13 of the Sentencing Guidelines, "a sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." The sentencing court may grant a downward departure for "diminished capacity" when the defendant presents medical reports, which reveal that either: "(1) the person is unable to absorb information in the usual way or to exercise the power of reason; or (2) the person knows what he is doing and that it is wrong but cannot control his behavior or conform it to the law." *United States v. McBroom*, 124 F.3d 533, 548 (3d Cir. 1997); *see also* U.S. Sentencing Guidelines Manual § 5K2.13 (" 'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."). In other words, the Court may grant a downward departure if the defendant has either a cognitive dysfunction and cannot understand that his or her conduct is wrong, or a volitional dysfunction and cannot stop himself or herself from performing an act that he or she knows is wrong. *See McBroom*, 124 F.3d at 548 (noting that the defendant may possess a cognitive impairment or a volitional impairment).

Before the Court may grant a downward departure pursuant to § 5K2.13, "a defendant must prove, among other things, that (1) the offense is 'nonviolent' and (2) a significantly reduced mental capacity contributed to commission of the offense." *McBroom*, 124 F.3d at

539 (citing *United States v. Rosen,* 896 F.2d 789, 791 (3d Cir.1990)). The Third Circuit has already determined that, as a matter of law, "the offense of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) is a 'nonviolent offense.'" *Id.* at 542. Moreover, in this case, there is no evidence of the use of violence in the commission of the crime, and, therefore, I find that the Lake's crime was non-violent. *See id.* ("The record is devoid of any evidence that McBroom's conduct involved 'violence in fact.'") (quoting *United States v. Askari,* Civil Action No. 95–1662, 1997 WL 92051, at \*3 (3d Cir. Mar.5, 1997) (Becker, J., concurring), *vacated on other grounds,* 159 F.3d 774 (3d Cir.1998)). Thus, I must consider whether Lake has a cognitive or volitional impairment.

■ There is no evidence in the record that Lake suffered from a cognitive impairment. Lake was a successful student at Montclair State University, who maintained a 3.488 grade point average out of a possible 4.0, in a masters degree program in theater arts. PSR ¶ 50. Additionally, in his report, Tutone observed that "Mr. Lake was fully oriented in all spheres with memory and cognitive function intact." Lake's Motion, Ex. B (Tutone Report at 3). Neither Tutone nor Foley reported any cognitive dysfunction after their interviews of Lake. Thus, I find that there is no evidence in the record that Lake suffers from a cognitive dysfunction.

A volitional dysfunction is one in which the defendant realizes that his or her conduct is wrong, but cannot control his or her behavior. *See McBroom,* 124 F.3d at 548. First, there is no evidence in the record to suggest that Lake realizes that his conduct was wrong. Tutone reported: "Mr. Lake was asked if he felt he was doing anything wrong. He replied 'no not really', 'because what I do comes from the heart.'" *Id.* (Tutone Report at 5). In response to the "Abel Becker Cognition Scale," Lake agreed with the following statements:

3) A child 13 or younger can make her (his) own decision as to whether she (he) wants to have sex with an adult or not.

12) Sometime in the future, our society will realize that sex between [a] child and an adult is allright [sic].

\* \* \*

19) My daughter (son) or other young child knows that I will still love her even if she refuses to be sexual with me.

27) An adult can know just how much sex between him (her) and a child will hurt the child later on.

*Id.* (Tutone Report at 2). Lake's agreement with these statements, as well as his belief that he has not done anything wrong, clearly demonstrates that Lake is not having trouble resisting an impulse that he believes is wrong; rather, Lake simply does not believe that the impulse is wrong. *Cf. McBroom,* 124 F.3d at 549 (remanding to the sentencing court because of evidence that "[a]lthough McBroom *understood the moral and legal implications of this activity,* he was unable to discontinue the practice") (emphasis added).

Furthermore, Foley's report indicates that Lake has no "difficulties with ... impulsiveness." Lake's Motion, Ex. A (Foley Report at 3). *But see id.,* Ex. B (Tutone Report at 5) (determining that Lake has "poor impulse control" and "compulsive pedophilic sexual behaviors"). Similarly, Foley concluded that "Mr. Lake's protocol indicates that he typically has good capacities for control but that he is currently experiencing a significant increase in situationally determined stress." *Id.,* Ex. A (Foley Report at 9). Foley also found that "[t]here are no strong indications of problems with impulse control or anger management." *Id.* (Foley Report at 10). Lake's own behavior confirms Foley's conclusion that Lake does not have a problem controlling his impulses. Lake told Foley that: "In March or April, 1997,

[Lake] recalls coming to the realization that downloading [child pornography] was an 'obligation' and that he was 'really sick of it'. He said that *he could resist it for a few days* but that he didn't want to 'stop cold turkey.'" *Id.* (Foley Report at 5) (emphasis added). In sum, there is compelling and persuasive evidence in the record which reflects that Lake does not believe that his conduct was wrongful, and that he has no difficulty in controlling his impulses. Accordingly, I find, by a preponderance of the evidence, that Lake does not, and never has, suffered from a cognitive or a volitional dysfunction. Therefore, I will deny Lake's motion for a downward departure based on his alleged diminished capacity.

### 3. Susceptibility to Treatment

▆ Lake argues that his "unusual susceptibility to treatment, as opposed to incarceration, brings his case outside the heartland and warrants [a] downward departure." Lake's Motion at 14. There is no evidence in the record, however, suggesting that Lake's case is "unusual enough for it to fall outside the heartland of cases." *See Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Indeed, Foley reports that "the best predictor that sexually offending behaviors will not occur in the future is completion of a sex offender treatment program." Lake's Motion, Ex. A (Foley Report at 12). Thus, according to Foley's report, Lake's susceptibility to treatment does not differ from most sexual offenders who have yet to undergo appropriate treatment. Furthermore, there is no evidence in the record to distinguish Lake's susceptibility to treatment from that of any other first-time sex offender. Accordingly, in the absence of any evidence that Lake's case is "outside the heartland" of Guideline cases, I find that a departure, pursuant to § 5K2.0, is unwarranted in this case. *See United States v. Artim,* 944 F.Supp. 363, 367 (D.N.J.1996) (finding that defendant's allegations are not "sufficiently 'extraordinary' to warrant a downward de-

parture from the applicable Guideline range").

### 4. Unusual Potential for Abuse in Prison

Finally, Lake requests that the Court grant a downward departure, pursuant to § 5K2.0, in light of Lake's appearance and the crime with which he has been charged. *See* Lake's Motion at 16–17. Specifically, Lake contends that because "[h]e is a slight individual, appears younger than his age, and has some effeminate characteristics[,] ... he is particularly susceptible to abuse in prison." *Id.* at 16.

▆ "[T]o qualify for a downward departure, a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse." *United States v. Graham,* 83 F.3d 1466, 1481 (D.C.Cir. 1996). Mere membership in a class of persons likely to suffer abuse in prison does not qualify a defendant for a downward departure pursuant to § 5K2.0. *See United States v. Winters,* 174 F.3d 478, 485–86 (5th Cir.1999); *see also United States v. Wilke,* 156 F.3d 749, 753 (7th Cir.1998) ("Mere membership in a particular class of offenders that may be susceptible to abuse in prison does not merit a departure for vulnerability to abuse in prison."). Furthermore, as the Seventh Circuit concluded in *Wilke:*

If we permitted defendants convicted of distributing child pornography to use the crime as a reason to justify a departure from the range recommended by the Guidelines, then we would eviscerate the recommended range for this crime and undermine the goals of the Sentencing Reform Act of 1984.... It seems illogical to us that the crime on which the Sentencing Commission based the recommended range may be a factor in justifying a departure from that range.... There would be no heartland of cases if the district court uses the nature of the offense in evaluating

whether mitigating circumstances exist—the same factor that established the sentencing range would also be a factor in justifying a departure from that range.

*Wilke,* 156 F.3d at 753–54 (citations omitted). Thus, the Court may only consider a defendant's individual traits in determining whether to grant a downward departure based upon a defendant's potential to suffer abuse in prison.

■■■■ In this case, there is almost no evidence that Lake's individual situation differs from the other cases inside the "heartland." In his report, Tutone observed that: "Given the nature of Mr. Lake's current charges and his severely depressed mental state, if he is incarcerated for any length of time he may need a degree of protection from other inmates or himself." *Id.,* Ex. B (Tutone Report at 5). This statement alone, however, is insufficient evidence from which to conclude that Lake's case is sufficiently extraordinary to bring this case "outside the heartland." *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035. First, the Court may not consider "Lake's current charges" as the basis for a departure. *See Wilke,* 156 F.3d at 754. Second, there is no evidence that Lake suffers from depression to a degree "so extreme as to substantially affect the severity of [his] confinement." *See Graham,* 83 F.3d at 1481. Thus, I find that there is no evidence that Lake is likely to suffer abuse in prison to an unusual degree and, therefore, I will deny Lake's motion for a downward departure on that basis.

## III. CONCLUSION

For the reasons set forth above, I find that there is no reliable evidence in the record suggesting that: (1) Lake's criminal history category under-represents his past criminal conduct or his likelihood of future criminal conduct; (2) Lake has a cognitive or volitional dysfunction sufficient to warrant a finding of diminished capacity; and, (3) Lake is susceptible to treatment or likely to suffer from abuse in prison to a

degree that distinguishes his case from the heartland of other cases. By contrast, I find, by a preponderance of the evidence, that the sheer volume of images of child pornography that Lake possessed removes his case from the heartland, justifying an upward departure in his total offense level of two-levels. Finally, I hold that downward departures for "minimal" or "minor participant" are unavailable in cases, such as this, where the defendant has only been charged with possession of child pornography. Accordingly, I will deny all of Lake's motions for a downward departure. I will grant the Government's motion for an upward departure with respect to the volume of images that Lake possessed, however, I shall deny it in all other respects.

In sum, as a result of my holdings, Lake has a total offense level of 20 and a criminal history category of I, which results in a Sentencing Guideline Range of 33–41 months. Further, I will impose a three-year term of supervised release, during which Lake must obtain appropriate sex offender treatment and, during which Lake may not engage in employment or volunteer activities that would provide him with access to minor children.